**Diane J. LAWS, et al., Plaintiffs,**

v.

**GEORGETOWN UNIVERSITY HOSPITAL, et al., Defendants.**

**Civ. A. No. 86–0110.**

United States District Court, District of Columbia.

Feb. 20, 1987.

of full citizenship to which he has no constitutional right in the first place.

*Bellei,* 401 U.S. at 836, 91 S.Ct. at 1071.

Jack H. Olender, Harlow R. Case and Anthony G. Newman, Washington, D.C., for plaintiffs.

Bruce R. Genderson and Steven A. Steinbach, Washington, D.C., for defendants.

### MEMORANDUM–ORDER

GASCH, Senior District Judge.

Parents Diane and William Laws and their son Jeffrey bring suit against defendants Georgetown University Hospital, Georgetown Anesthesia Associates, and Dr. Ananth R. Nancherla. During the Caesarean delivery of Jeffrey Laws on January 17, 1983, Diane Laws suffered a cardiac arrest. As a result, plaintiffs claim that both mother and child have suffered serious and permanent injuries. Jeffrey Laws suffers from cerebral palsy and mental and motor retardation. The plaintiffs ascribe these injuries to the medical malpractice of the defendants.

During the deposition of Dr. Jeffrey King, the obstetrician in charge of the labor and delivery, the deponent stated that following Jeffrey Laws' birth he sent a memorandum to Dr. MacNamara, the Chairman of the Department of Anesthesiology at Georgetown University School of Medicine, concerning the complications attending Ms. Laws' delivery. Dr. MacNamara received the letter, dated January 19, 1983. The plaintiffs seek to discover this letter. The defendants object.

In *Bredice v. Doctors Hospital, Inc.,* 50 F.R.D. 249 (D.D.C.1970), *aff'd,* 479 F.2d 920 (D.C.Cir.1973), a member of this Court held that minutes and reports of hospital staff meetings, through which the medical staff of hospitals review, analyze, and evaluate the clinical work of their members, are entitled to a qualified privilege. *Id.* at 251. The Court reasoned that

> [c]onfidentiality is essential to effective functioning of these staff meetings; and these meetings are essential to the continued improvement in the care and treatment of patients. Candid and conscientious evaluation of clinical practices is a *sine qua non* of adequate hospital care. To subject these discussions and deliberations to the discovery process, without a showing of exceptional necessity, would result in terminating such deliberations. Constructive professional criticism cannot occur in an atmosphere of apprehension that one doctor's suggestion will be used as a denunciation of a colleague's conduct in a malpractice suit.

*Id.* at 250.

The defendants rely on *Bredice* on the ground that the staff at Georgetown University Hospital conducted an Anesthesia Morbidity Meeting on January 24, 1983, at which time the injuries sustained by Ms. Laws and her child were discussed. According to Dr. MacNamara,

> [t]he Department of Anesthesia considers anesthesia morbidity meetings 'peer review' proceedings in that, among other things, they review the actions of and quality of medical services by persons engaged in the practice of medicine at Georgetown University Hospital.

MacNamara Declaration at ¶ 5. The Court finds the anesthesia morbidity meetings to be staff meetings as defined by the Court in *Bredice.*

**826**

The question presented is whether the qualified privilege discussed in that case, designed to protect the committee system and its retrospective review of hospital personnel and procedures, should be extended to this case. Such an extension of the law would protect a private communication prepared by a doctor accused of malpractice, about the incident at issue, delivered to the Chairman of the department of the defendant's specialty, and ultimately reviewed at a hospital staff meeting.

The Court holds that the policies motivating the *Bredice* decision are equally present in this case. The Court's conclusion is founded on the practical realization that the effectiveness of a hospital staff meeting is contingent upon a reliable stream of information detailing the circumstances of medical procedures under review. Permitting discovery of an explanation that a doctor accused of malpractice sends to his supervisor, which is obviously intended to prompt some kind of review, and in fact results in review at a staff meeting, could limit the very best source of committee data. Like the *Bredice* court, this Court recognizes an overwhelming public interest in promoting improvement in health care through the mechanism of staff peer review. The Court is thus reluctant to impair the flow of information which may be most valuable to such committees. Accordingly, upon consideration of the motion of the plaintiffs to compel discovery of Dr. King's letter, and the opposition thereto, it is on this 19th day of February, 1987,

ORDERED that the plaintiffs' motion be, and hereby is, denied.