Kathaleen N. SPINKS, a minor and incompetent person, Betty Spinks, on behalf of her daughter Kathaleen N. Spinks, Plaintiffs,

v.

CHILDREN'S HOSPITAL NATIONAL MEDICAL CENTER, et al., Defendants.

CA 88–1884 (SSH/PJA).

United States District Court, District of Columbia.

Feb. 3, 1989.

As Amended Feb. 7, 1989.

Henry M. Lloyd, Washington, D.C., for plaintiffs.

Austin F. Canfield, Jr., Bethesda, Md., for defendants.

MEMORANDUM OPINION

PATRICK J. ATTRIDGE, United States Magistrate.

*Background*

In this medical malpractice action for damages against Children's Hospital and two anesthesiologists, the minor plaintiff, through her mother, seeks an order compelling the hospital to produce for inspection and copying, all documents relating to a Morbidity and Mortality Conference com-

mittee hearing held on April 3, 1984,[1] at which time the care and treatment rendered the minor plaintiff was discussed. This motion was prompted by the hospital's refusal to produce "a handwritten description of the case by Dr. Weller and typed Minutes of the Conference which was held April 3, 1984," on the grounds that these documents are protected from discovery by reason of D.C.Code § 32–505(a) and pertinent case authority.

The plaintiff argues that Dr. Weller's notes are clearly beyond the protection of the D.C.Code § 32–505(a) since the statute specifically provides that the qualified privilege against production does not extend to any oral or written statement submitted to or presented before the committee.

As for the minutes of the conference, the plaintiff urges that she has met the prerequisite showing of "extraordinary necessity" because she was under anesthesia and the only other witnesses to the events that occurred at that time were hospital employees. She contends that so far her efforts to discover what happened to cause her daughter's debilitating and catastrophic injuries have been frustrated because the defendants explanations have changed. The plaintiff cites references to the hospital chart discharge summary which attributed the minor's injuries to "cerebral anoxia", and to a cardiac consultant's conclusions also found in the patient's chart which similarly attribute her injuries to a "possible hypoxic/cardiac insult during perioperative period" noting that anesthetic agents, known to cause dilation of the blood vessels, were used. The plaintiff goes on to observe that even one of the defendant physician's attributes the problems to the choice of anesthesia.

The plaintiff contrasts these observations with what she says is an inconsistent and contrary position, taken for the first time after suit was filed, wherein it is alleged that the defendants now attribute the minor's injuries to an "anaphylactoid-like reaction." [2]

The plaintiff concludes, that the conference minutes "... presumably (will) contain findings as to what happened in that operating theatre...."

The defendants oppose production of the notes and minutes, arguing that the documents were created in anticipation of litigation thus protected; that the case law of this jurisdiction cloaks these documents with a veil of confidentiality and, in the alternative, that the plaintiff has failed to demonstrate the statutory showing of "extraordinary necessity."

### Discussion

Rule 501 of the Federal Rules of Evidence provides in pertinent part:

... (I)n civil actions and proceedings ... the privilege of a witness, person ... shall be determined in accordance with State law.

The applicable state law provides:

(a) Absent a showing of extraordinary necessity, the minutes, analyses, preliminary and final findings and reports of a medical utilization review committee, peer review committee, medical staff committee or tissue review committee shall not be subject to discovery or admissible into evidence in any civil or administrative proceeding. This qualified privilege does not extend to primary health records or to any oral or written statements submitted to or presented before a medical utilization review committee, peer review committee, medical staff committee or tissue review committee. D.C.Code Ann. § 32–505 (1981).

One of the principle purposes for enacting this provision was to codify the law as set out in *Bredice v. Doctors Hospital, Inc.*, 50 F.R.D. 249 (D.D.C.1970), aff'd. 479 F.2d 920 (D.C.Cir.1973) (Amended Rept., Comm. on the Judiciary, Council of the District of Columbia, Apr. 26, 1978, p. 3).

---

1. The plaintiff erroneously referred to the date as August 3, 1984.

2. "An unusual or exaggerated allergic reaction of an organism to foreign protein or other substances ..." Dorland's Illustrated Medical Dictionary, Twenty-fifth Ed., Saunders.

The City Council recognized that medical review committees serve an important function by promoting better standards of patient care, more efficient use of medical facilities and assuring compliance with the ethical standards of the profession. Although the scope of the medical review proceedings concern *past* patient care, their goal is to promote better *future* care through self-analysis, and that objective should be encouraged.

As Judge Corcoran observed in *Bredice,* "(t)he value of these discussions and reviews in educating (those who participate) is undeniable. This value would be destroyed if the merits and the names of those participating were to be opened to the discovery process." 50 F.R.D. at 250.

The City Council concurred in those observations and concluded that the free exchange of information during medical review committee hearings was so important so as to require the creation by statute of a qualified privilege to encourage the self-policing efforts of the medical community. (Amended Rept., *supra*, at 2). And that, absent a showing of "extraordinary necessity" the medical review committee meeting minutes are not discoverable.

The discovery of Dr. Weller's notes and the committee minutes will be discussed in reverse order.

### Committee Minutes

■ The plaintiff contends that she has made the requisite showing of "extraordinary necessity" thereby entitling her to the committee minutes. She argues that the defendants have stated different *opinions* regarding the cause of the minor plaintiff's present physical disabilities. She speculates that "the minutes of the hospital peer review committee meeting back in April, 1984 presumably contain findings as to what happened in that operating theatre that are highly relevant to these proceedings." (plaintiff's memorandum p. 7). However, relevancy is not at issue. Even relevant evidence may not be discoverable if privileged.

The right to discover the findings, or in other words the *opinions* of the committee,

is the issue. Moreover, those opinions will not be dispositive of these proceedings. The ultimate opinion whether or not the child's present condition is, in some substantial degree, caused by the medical negligence of these defendants will be the finding of the jury.

The plaintiff does not contend that she is unable to obtain *opinions* from other sources. Nor does she complain that she has been denied access to the raw factual data contained in any other hospital records or from sources outside the confidential findings of the review committee. Moreover, a reading of the complaint and the plaintiff's answers to the defendants interrogatories clearly demonstrates that the plaintiff has had no difficulty securing experts of her own, ready, able and willing to express opinions regarding the cause of this child's present plight.

It appears that the plaintiff seeks the review committee findings, not out of necessity, but to confirm views already expressed to her by her own experts, to judge the strength of her experts opinions or to uncover other medical and legal theories upon which to prosecute this case.

The plaintiff's showing is insufficient to raise to the level of "extraordinary necessity" needed to override the manifest public interest in protecting these records from disclosure in civil litigation.

### Dr. Weller's Notes

■ The plaintiff contends that Dr. Weller's notes are outside the scope of the statutory privilege and, therefore, discoverable. She argues that the qualified privilege surrounding the committee minutes and findings, by the statute's own terms, does not extend to written statements submitted or presented to the committee.

Although the plaintiff may be correct in her observations, it does not necessarily follow that such notes are, therefore, discoverable. Nor does the statute mandate that result. These notes, are to be treated like any other documents subject to Fed.R. Civ.P. 34. The scope of Rule 34 does not mean, however, that every document is au-

tomatically discoverable. Its scope is limited by Rule 26(b) and the applicable case law.

As *Bredice* and *Laws, et al. v. Georgetown University Hospital, et al.,* 656 F.Supp. 824, 826 (D.D.C.1987) make clear, "... the effectiveness of a hospital staff meeting is contingent upon a reliable stream of information detailing the circumstances of (the) medical procedures under review ..."

Unlike the note in *Laws,* which was written almost contemporaneously with the event and presumably more reliable but still found not discoverable, the notes at issue were created some two months after the event solely for the purpose of aiding Dr. Weller's presentation to the Conference. (Weller's answer to plaintiff's interrogatory 5(b)).

Moreover, the plaintiff has yet to depose this defendant. There is no showing that he has had any memory lapse or is otherwise uncooperative in providing information.

To subject communications prepared by a treating physician for presentation to a medical review committee to subsequent civil discovery process, in the absence of a showing of some compelling reason, would result in ending such proceedings or drastically curtailing their effectiveness to the detriment of the public. This the Court declines to do on the basis of the present state of the record.

The Court concludes that these notes are subject to the same common law qualified privilege discussed in *Bredice* and *Laws,* and, for the reasons stated, declines to order their production.

An appropriate order accompanies this memorandum.

### ORDER

Upon consideration of the plaintiff's motion to compel production of documents, the opposition, reply, the entire file, and for the reasons set forth in the accompanying memorandum, it is this 3rd day of February 1989:

ORDERED that the motion be, and hereby is, denied.