21 F.3d 465
 305 U.S.App.D.C. 371, Fed. Sec. L. Rep. P 98,170,
28 Fed.R.Serv.3d 1155
 FIRST EASTERN CORPORATION, Derivatively by M.W. Friedman;
Joseph D'Andrea, on Behalf of Himself and on Behalf of all
Others Similarly Situated; M.W. Friedman, on Behalf of
Himself and on Behalf of all Others Similarly Situated, Appellants,
v.
William R. MAINWARING, et al., Appellees.
 No. 92-7240.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Feb. 17, 1994.
Decided April 19, 1994.
 
 Appeal from the United States District Court for the District of Columbia (92ms0289).
 Mark C. Rifkin, Haverford, PA, argued the cause for appellants. With him on the brief was Miles B. Rittmaster, Haverford, PA, James R. Malone, Jr., Haverford, PA, entered an appearance.
 Jeffrey G. Weil, Philadelphia, PA, argued the cause for appellees. With him on the brief were Robert C. Heim and Marshall Walthew, Philadelphia, PA.
 Before: EDWARDS, SILBERMAN, and HENDERSON, Circuit Judges.
 Opinion for the Court filed by Circuit Judge SILBERMAN.
 SILBERMAN, Circuit Judge:
 
 
 1
 Appellants, plaintiffs in a Pennsylvania lawsuit against First Eastern Bank and its officers, sought to enforce a subpoena duces tecum served on an independent management consultant that federal regulators required First Eastern to retain. The district court granted the Bank's motion to quash the subpoena because the documents requested are protected by an unspecified "qualified privilege" against disclosure. We reverse.
 
 I.
 
 2
 In February 1992, appellants filed a class action and derivative lawsuit against First Eastern Bank and its officers in the Eastern District of Pennsylvania, alleging violations of federal securities law and state common law duties. The gravamen of their complaint is that the defendants materially misrepresented the financial condition of the Bank, leading to artificially inflated stock prices that injured investors in the Bank's securities.
 
 
 3
 During discovery, appellants served upon Furash & Company, a management consulting firm, a subpoena to produce various documents relating to First Eastern. Back in 1991, the Office of the Comptroller of the Currency (OCC), as part of its annual regulatory examination of the Bank, had required First Eastern to retain a consultant to conduct an independent review of the Bank's management practices. The Bank selected Furash and, with the OCC's approval, engaged the firm to conduct the management assessment. Furash and First Eastern agreed to keep the study confidential. After reviewing a variety of documents provided by First Eastern and performing its independent analysis of the Bank, Furash produced a final report in June 1992 and provided a copy to each director of First Eastern and to the OCC. Appellants' subpoena sought the Furash report and other documents related to the review of First Eastern.
 
 
 4
 After Furash refused to comply, appellants sought to enforce the subpoena in our district court; the subpoena was served on Furash at its offices in Washington, D.C. First Eastern and Furash moved to quash the subpoena allegedly because it sought information that was privileged or otherwise protected from disclosure. In a brief order, the district court granted the motion to quash the subpoena, holding that "the documents are subject to a qualified privilege which, under the circumstances, is more important to preserve than the documents are essential to petitioners' case."
 
 II.
 
 5
 The Bank argues initially that the district court decision is justified by the socalled self-evaluative privilege which encourages "confidential self-analysis and self-criticism." Federal Trade Comm'n v. TRW, Inc., 628 F.2d 207, 210 (D.C.Cir.1980); see also Bredice v. Doctors Hosp., Inc., 50 F.R.D. 249 (D.D.C.1970), aff'd, 479 F.2d 920 (D.C.Cir.1973). First Eastern candidly acknowledges that it failed to raise this claim before the district court but asks us to use our discretion to consider the question, see District of Columbia v. Air Florida, Inc., 750 F.2d 1077, 1085 (D.C.Cir.1984). We are presented with no "exceptional circumstances," however, that would warrant departure from our general rule that a party waives an argument by failing to raise it below. See Roosevelt v. E.I. Du Pont de Nemours & Co., 958 F.2d 416, 419 n. 5 (D.C.Cir.1992), and therefore we refuse to entertain the claim.[1]
 
 
 6
 First Eastern did argue to the district court that the information sought is protected from discovery because it was prepared as part of the bank examination process. It contends that disclosure of the Furash report violates 12 C.F.R. Sec. 4.18(c) (1993)[2] and 12 C.F.R. Sec. 18.9 (1993),[3] the OCC's regulations limiting disclosure of bank examination reports. On their face, however, the regulations apply only to reports of examination or supervisory activity (or portions thereof) "prepared by the Office of the Comptroller of the Currency," 12 C.F.R. Sec. 18.9 (1993), not to other information related to the examination process or to materials prepared by a third party. Indeed, appellants acknowledge that they can obtain the OCC reports of examination only through the OCC, and they have served a subpoena on the OCC for that purpose. What they seek here are materials prepared by Furash that the regulations do not cover.
 
 
 7
 The Bank relies on several unpublished opinions which, based generally on the confidentiality of the regulatory process, held that reports and other related information are protected--regardless of the source of the information. These cases are of little moment since they have no precedential value, and, in any event, they deal with regulations of other bank regulatory agencies which are more expansive in their protective scope. See, e.g., 12 C.F.R. Sec. 510.5(a) (1993) (Office of Thrift Supervision: "all reports or other information" made available to the banks by the officer); 12 C.F.R. Sec. 261.8(a)(2)(i) (1993) (Federal Reserve Board: "[a]ny matter that is contained in or related to confidential supervisory information prepared by, on behalf of, or for the use of the Board"); 12 C.F.R. Sec. 309.6(c) (1993) (FDIC: "reports of examination and other information"). The Bank contends that Feinberg v. Hibernia Corporation, 1992 WL 54738 (E.D.La.1992),[4] actually held that the scope of the OCC regulations is coterminous with those promulgated by other bank regulatory agencies. But the court there merely acknowledged in dictum that the OCC has regulations which "track" those of the Board and the FDIC. Id.at * 6.
 
 
 8
 It is nevertheless urged that we should not interpret the OCC regulations differently from those applicable to other agencies, since all of these regulations rest on the same general policy rationale. The OCC has chosen to draft its regulations more narrowly, however, and absent a claim of unreasonable statutory interpretation, we may not question the agency's decision. We note that the OCC, unique among bank regulators, has expressly provided that violations of its disclosure prohibition are subject to a statutory penalty. See 12 C.F.R. Sec. 4.18(c) (1993) ("Any other disclosure or use of this report except as expressly permitted by the Comptroller of the Currency may be subject to the penalties provided in 18 U.S.C. Sec. 641."); see also Feinberg at * 6 ("[T]he OCC regulations concerning disclosure of bank examination reports are even more strict, subjecting those who violate its provisions to a statutory penalty."). It is thus possible that the OCC limited the scope of its regulation in light of the potential for such liability.
 
 
 9
 In addition to the OCC regulations, the Bank also relied below and continues to rely on the more general governmental deliberative process privilege, which protects documents reflecting advisory opinions, recommendations, and deliberations comprising an agency's decisionmaking process. See NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150, 95 S.Ct. 1504, 1516, 44 L.Ed.2d 29 (1975). Variously known as the official information privilege, intragovernmental opinion privilege, and administration deliberation privilege, the privilege "rests most fundamentally on the belief that were agencies forced to operate in a fishbowl, ... the frank exchange of ideas and opinions would cease and the quality of administrative decisions would consequently suffer." Dudman Communications Corp. v. Department of Air Force, 815 F.2d 1565, 1567 (D.C.Cir.1987) (internal quotations and citations omitted). The Bank emphasizes that the privilege extends to a document "even if it was prepared for an agency by outside experts," since "[t]he Government may have a special need for the opinions and recommendations of temporary consultants, and those individuals should be able to give their judgments freely without fear of publicity." Soucie v. David, 448 F.2d 1067, 1078 n. 44 (D.C.Cir.1971). And the privilege is not limited to information prepared by consultants working directly for the government but may include materials generated at the request of an agency. See Ryan v. Department of Justice, 617 F.2d 781, 789-90 (D.C.Cir.1980) (responses from U.S. senators to agency questionnaire not subject to public disclosure under FOIA).
 
 
 10
 Appellants point out that, unlike in Soucie and Ryan, Furash was not working for the government but was retained by First Eastern and understood that its client was the Bank--not the OCC. Appellees respond that since the OCC required the Bank to engage the consultant, the principle of Soucie and Ryan should extend to this situation. We need not decide the question, however, since only the government can assert its deliberative process privilege, see Litton Industries, Inc. v. Lehman Brothers Kuhn Loeb Inc., 125 F.R.D. 51, 53 (S.D.N.Y.1989), and the OCC did not choose to intervene in this proceeding to assert the privilege. We cannot seriously consider whether the government's deliberative process privilege extends as far as First Eastern claims without an argument from the government that it does.[5]
 
 
 11
 * * * * * *
 
 
 12
 Accordingly, the district court's opinion is reversed and remanded.[6]
 
 
 
 [1]
 In any event, we have only recently stated that "federal courts should not create evidentiary privileges lightly...." Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. RTC, 5 F.3d 1508, 1514 (D.C.Cir.1993) (citing University of Pennsylvania v. EEOC, 493 U.S. 182, 189, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990)). A qualified privilege has been found only in limited cases involving areas of public health, see Bredice, 50 F.R.D. at 250-51; Laws v. Georgetown Univ. Hosp., 656 F.Supp. 824, 825-26 (D.D.C.1987), or public safety, see Bradley v. Melroe Co., 141 F.R.D. 1, 2-3 (D.D.C.1992), and we would unlikely "fashion a privilege lacking in historical or statutory basis." Linde Thomson, 5 F.3d at 1514
 
 
 [2]
 That section provides in relevant part:
 The report of examination is the property of the Comptroller and is loaned to the bank or holding company for its confidential use only. Under no circumstance shall the bank or holding company or any director, officer or employee thereof make public or disclose in any manner the report of examination or any portion of the contents thereof to any person or organization not officially connected with the bank as officer, director, employee, attorney, auditor, or independent auditor.
 
 
 [3]
 That section provides:
 [A] national bank may not disclose any report of examination or report of supervisory activity, or any portion thereof, prepared by the Office of the Comptroller of the Currency.
 
 
 [4]
 Under D.C.Cir.R. 28(c) (Jan. 1, 1994), we take notice of the case only because the Fifth Circuit does not prohibit citation of unpublished dispositions. See 5th Cir.R. 47.5.3. (Oct. 1, 1989)
 
 
 [5]
 Even if the Bank could assert a valid privilege in this case, it is not absolute, and competing interests would have to be balanced. At minimum, the district court should have considered:
 (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.
 In re Subpoena Served Upon Comptroller of Currency, 967 F.2d 630, 634 (D.C.Cir.1992) (citation omitted). And since purely factual information is excluded from the privilege, see id., the court must make "findings about the factual versus evaluative nature of the various documents." Schreiber v. Society for Savings Bancorp, Inc., 11 F.3d 217, 221 (D.C.Cir.1993). The conclusory order in this case is inadequate in these respects.
 
 
 [6]
 The district court did not reach the Bank's claim (preserved on appeal) that the subpoena was overly broad and sought confidential proprietary information not germane to Furash's report