(No. 66250.—

THE ILLINOIS EDUCATIONAL LABOR RELATIONS
BOARD, Appellant, v. HOMER COMMUNITY CON-
SOLIDATED SCHOOL DISTRICT No. 208 *et al.*,
Appellees.

*Opinion filed October 25, 1989.—Rehearing
denied December 4, 1989.*

30

CLARK, J., joined by CALVO, J., dissenting.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney and Robert J. Ruiz, Solicitors General, Valerie J. Peiler and Rosalyn B. Kaplan, Assistant Attorneys General, and Randi Hammer Abramsky and Julie K. Hughes, all of Chicago), for appellant.

Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Decatur (Jack T. Taylor and Michael J. Foley, of counsel), for appellee Homer Community Consolidated School District No. 208.

Gregory J. Malovance, of Winston & Strawn, of Chicago, for appellee Homer Association of Teachers, IEA-NEA.

Brian A. Braun, of Miller, Tracy, Braun & Wilson, Ltd., of Monticello, for *amicus curiae* Illinois Association of School Boards.

JUSTICE RYAN delivered the opinion of the court:

During a labor strike, intervenor Homer Education Association (Association) and respondent/appellee Homer Community Consolidated School District No. 208 (school district) filed cross charges of bad-faith bargaining with petitioner/appellant, the Illinois Educational Labor Relations Board (Board). At a hearing on the matter, the Association requested production of certain evidence relating to the school district's bargaining strategy, objectives and tactics. The school district filed a motion *in limine*, seeking to bar this information from discovery, claiming that the evidence sought was privileged. The Board denied the motion, issued a subpoena to compel production of the evidence, and moved to enforce the subpoena in

the circuit court of Champaign County. The circuit court ordered the subpoena enforced and the school district appealed.

The appellate court reversed, holding that the evidence was subject to a privilege. (160 Ill. App. 3d 730.) A majority of the court held that the privilege was a qualified one, to be applied by the circuit court via *in camera* examination of the evidence. We granted the Board's petition for leave to appeal under our Rule 315 (107 Ill. 2d R. 315). We affirm the decision of the appellate court. More detail concerning the proceeding is given below.

The paramount issue this appeal presents is whether certain information pertaining to a party's collective-bargaining strategy is privileged from disclosure during unfair labor practice proceedings conducted under the Illinois Educational Labor Relations Act (Act) (Ill. Rev. Stat. 1987, ch. 48, par. 1701 *et seq.*). The primary issue argued in this court is whether the circuit court or the Board should apply the qualified privilege.

During a labor dispute, the Association and the school district each filed charges of unfair labor practices with the Board. After investigating the charges, the Board issued a series of complaints alleging that both parties violated section 14 of the Act (Ill. Rev. Stat. 1987, ch. 48, par. 1714) by refusing to bargain in good faith. The Board consolidated the complaints and set a hearing date before a hearing examiner.

During the adjudication of the complaints, the Association requested that the school district produce certain documents relating to its bargaining strategy. Among other things, the Association requested:

"1. All bargaining notes or minutes which have been taken by the District.

2. All bargaining proposals made by the Association or the District upon which the District made any mark or notation.

3. All documents (excluding bargaining notes and proposals) which relate to the District's bargaining objectives, strategy or tactics.

4. All documents which relate to any plan or action of the District in the event of a strike by the Association or the effectuation or implementation of any such plan or action.

5. All documents which relate to any discussion or communication by the District concerning bargaining, any grievances which were filed by the Association or any of its members since April 10, 1986, or the strike by the Association."

The school district objected to the Association's requests, claiming that the documents sought were privileged information. The school district filed a motion *in limine* at the consolidated hearing to prevent disclosure of its bargaining strategy. The motion asked the hearing examiner to prohibit the Association from eliciting any information, by either written or oral means, concerning the closed-session deliberations of the district school board during its bargaining-strategy meetings.

The hearing examiner denied the school district's motion and ordered production of the documents that the Association requested. The school district refused to produce the documents and instructed its members not to answer any questions concerning its closed-session meetings. Subsequently, the Board issued a subpoena directing the school district to produce the requested documents. The subpoena also stated that members of the district school board would be expected to testify concerning closed-door bargaining-strategy sessions.

When the school district still refused to comply with the information requests, the Board filed a petition to enforce the subpoena in circuit court pursuant to section

15 of the Act (Ill. Rev. Stat. 1987, ch. 48, par. 1715). The court granted the Association leave to intervene. The school district filed a motion to quash the subpoena, again claiming that the information sought was privileged.

The circuit court found that no privilege existed, and granted the Board's petition to enforce the subpoena. On appeal, the appellate court reversed, creating a qualified privilege that the circuit court, on remand, must apply through an *in camera* proceeding. 160 Ill. App. 3d at 732.

We begin by noting that privileges are an exception to the general rule that the public has "a right to every man's evidence." (8 J. Wigmore, Evidence §2192, at 70 (McNaughton rev. ed. 1961).) Privileges "are designed to protect weighty and legitimate competing interests" and are not to be "lightly created nor expansively construed, for they are in derogation of the search for truth." (*United States v. Nixon* (1974), 418 U.S. 683, 709-10, 41 L. Ed. 2d 1039, 1065, 94 S. Ct. 3090, 3108.) This court, in declining to expand the statutory privilege for interspousal communications in criminal cases, stated:

> "The expansion of existing testimonial privileges and acceptance of new ones involves a balancing of public policies which should be left to the legislature. A compelling reason is that while courts, as institutions, find it easy to perceive value in public policies such as those favoring the admission of all relevant and reliable evidence which directly assist the judicial function of ascertaining the truth, it is not their primary function to promote policies aimed at broader social goals more distantly related to the judiciary. This is primarily the responsibility of the legislature. To the extent that such policies conflict with truthseeking or other values central to the judicial task, the balance that courts draw might not reflect the choice the legislature would make." (*People v. Sanders* (1983), 99 Ill. 2d 262, 271.)

Furthermore, if one claims to be exempt from disclosing information by reason of a privilege, then that party has the burden of establishing the privilege. (See *Krupp v. Chicago Transit Authority* (1956), 8 Ill. 2d 37, 42.) Nevertheless, this court will recognize a privilege to protect communications in certain rare instances where the following four conditions are present:

" '1. The communications must originate in a *confidence* that they will not be disclosed.

2. This element of *confidentiality must be essential* to the full and satisfactory maintenance of the relation between the parties.

3. The *relation* must be one which in the opinion of the community ought to be sedulously *fostered*.

4. The *injury* that would inure to the relation by the disclosure of the communication must be *greater than the benefit* thereby gained for the correct disposal of litigation.' " (Emphasis in original.) *In re October 1985 Grand Jury No. 746* (1988), 124 Ill. 2d 466, 475, quoting 8 J. Wigmore, Evidence §2285, at 527 (McNaughton rev. ed. 1961).

The communications at issue here, deliberations among school board members concerning collective-bargaining strategy, do "originate in a confidence that they will not be disclosed." Disclosure of these deliberations to a teachers' union with whom the school board is engaged in collective bargaining would seriously undermine the board's negotiating position. School board members would be reluctant to discuss bargaining strategy if they thought their discussions would be disclosed to the union. Similarly, union negotiating teams might be hampered in their planning sessions if a school board could subpoena information contained within such strategy meetings.

Moreover, we find that this confidentiality is "essential to the full and satisfactory maintenance of the relation between the parties." Fear of disclosure would alter

the atmosphere of free discussion necessary to formulating bargaining strategy, and thus crimp the collective-bargaining process. Also, the damage that would result from disclosing these communications would be greater than the benefit gained by using this information to discover and punish unfair labor practices.

Therefore, having found that three of the four prongs of the test for creating a privilege exist, we must examine whether "the relation [is] one which in the opinion of the community ought to be sedulously fostered." Initially, the parties in the courts below raised the issue of whether the General Assembly created a statutory privilege for collective-bargaining matters discussed at closed school board meetings by exempting these matters from the Open Meetings Act (Ill. Rev. Stat. 1987, ch. 102, par. 41 *et seq.*) and the Freedom of Information Act (Ill. Rev. Stat. 1987, ch. 116, par. 201 *et seq.*). The Open Meetings Act requires that "[a]ll meetings of public bodies shall be public meetings." (Ill. Rev. Stat. 1987, ch. 102, par. 42.) Written minutes must be kept at these meetings and made available to the public for inspection. (Ill. Rev. Stat. 1987, ch. 102, par. 42.06.) A number of exceptions are provided in the Open Meetings Act that allow closed meetings in certain situations, including an exemption for collective-negotiating matters between public employers and employees. (Ill. Rev. Stat. 1987, ch. 102, par. 42.) Written minutes must also be kept for these closed meetings, but need be made available for "public inspection *** only after the public body determines that it is no longer necessary to protect the public interest or the privacy of an individual by keeping them confidential." Ill. Rev. Stat. 1987, ch. 102, par. 42.06(b).

Like the Open Meetings Act, the Freedom of Information Act allows the public access to governmental information. Under the Freedom of Information Act, all public records must be made available to the public for

inspection and copying. (Ill. Rev. Stat. 1987, ch. 116, par. 203.) It further provides:

"§7. The following shall be exempt from inspection and copying:

\* \* \*

(m) Minutes of meetings of public bodies which meetings are closed to the public as provided in the Open Meetings Act \*\*\*.

\* \* \*

(q) Documents or materials relating to collective negotiating matters between public bodies and their employees or representatives, except that any final contract or agreement shall be subject to inspection and copying." Ill. Rev. Stat. 1987, ch. 116, pars. 207(m), (q).

Although both acts exempt public collective-negotiating matters from their disclosure requirements, it is not clear from the plain language of the acts whether the General Assembly intended these statutes to create a statutory privilege. Nevertheless, we find this language indicative of a legislative intent that collective-bargaining strategy sessions be kept confidential. Moreover, a statutory privilege based on these two acts would apply only to governmental bodies (here, the school district) and would not prohibit union strategy meetings from being discovered. Consequently, we decline to base any privilege solely on these statutes, but instead view these acts as evidence of a public policy favoring confidentiality in collective-bargaining strategy.

We find further evidence of legislative intent regarding this policy of confidentiality in the Illinois Educational Labor Relations Act (Ill. Rev. Stat. 1987, ch. 48, par. 1701 et seq.). We note that section 2(b) of the Act prevents "confidential employees" from joining educational employee labor organizations. (Ill. Rev. Stat. 1987, ch. 48, par. 1702(b).) Section 2(n) of the Act defines a "confidential employee" as one who:

"(i) in the regular course of his or her duties, assists and acts in a confidential capacity to persons who formulate, determine and effectuate management policies with regard to labor relations or who (ii) in the regular course of his or her duties has access to information relating to the effectuation or review of the employer's collective bargaining policies." (Ill. Rev. Stat. 1987, ch. 48, par. 1702(n).)

Section 2(n) of the Act thus prevents employees who may have knowledge of, or access to, school board collective-bargaining strategy from joining labor organizations. The purpose of section 2(n), as the appellate court recognized in *Board of Education of Community Consolidated High School District No. 230 v. Illinois Educational Labor Relations Board* (1987), 165 Ill. App. 3d 41, is to protect educational employers " 'from premature disclosure of their bargaining proposals and labor relations policies that could undermine their bargaining strategies.' " (165 Ill. App. 3d at 61, quoting *Community Consolidated School District No. 59*, 2 Pub. Employee Rep. (Ill.) par. 1088, case No. 85—UC—0009—C (June 24, 1986).) This intent would obviously be frustrated if labor organizations were allowed to obtain that same information through discovery.

Furthermore, the "confidential employee" test in the Illinois act is derived from decisions of the National Labor Relations Board (NLRB) which have always excluded from unions employees who had advance knowledge of an employer's position in labor relations. (*Board of Education of Plainfield Community Consolidated School District No. 202 v. Illinois Educational Labor Relations Board* (1986), 143 Ill. App. 3d 898, 907-08.) Exclusion of confidential employees by the NLRB reflects the nature of the collective-bargaining process and has a "reasonable basis in law." (*NLRB v. Hendricks County Rural Electric Membership Corp.* (1981), 454 U.S. 170, 190, 70

L. Ed. 2d 323, 338, 102 S. Ct. 216, 228-29.) Excluding confidential employees is in part intended to keep a sharp line between management and labor, "a line fundamental to the industrial philosophy of the labor laws of this country." (*Hendricks County Rural Electric Membership Corp.*, 454 U.S. at 193, 70 L. Ed. 2d at 340, 102 S. Ct. at 230 (Powell, J., concurring in part and dissenting in part).) This dividing line would be illusory if either side had access to the other's bargaining strategy through the discovery process.

Keeping bargaining strategy confidential is an important concern in Federal labor law matters. (*Cf. Harvey's Wagon Wheel, Inc. v. NLRB* (9th Cir. 1976), 550 F.2d 1139.) In *Berbiglia, Inc. v. NLRB* (1977), 233 N.L.R.B. 1476, an employer requested that the NLRB issue subpoenas to discover union records which included, among other things, communications between union officials and members regarding strike actions. The subpoena was revoked:

> "The basic reason for revocation of the subpenas [*sic*] so far as here relevant was [the] view that requiring the Union to open its files to Respondent would be inconsistent with and subversive of the very essence of collective bargaining and the quasi-fiduciary relationship between a union and its members. If collective bargaining is to work, the parties must be able to formulate their positions and devise their strategies without fear of exposure. This necessity is so self-evident as apparently never to have been questioned." (233 N.L.R.B. at 1495.)

Similarly, the NLRB has refused to compel Federal mediators to reveal information received during mediation in order to preserve the confidentiality necessary to effective collective bargaining. See *NLRB v. Joseph Macaluso, Inc.* (9th Cir. 1980), 618 F.2d 51.

Consequently, we find that there exists a strong public policy protecting the confidentiality of labor-negotiat-

ing strategy sessions. We find that this policy sufficiently satisfies that portion of the four-prong test for the establishment of a common law privilege which requires that "the opinion of the community *** sedulously foster[s]" this privilege. Accordingly, we hold that some type of privilege is necessary to prevent disclosure of either party's negotiating strategy during an unfair labor practice proceeding before the Illinois Educational Labor Relations Board.

We find further support for this conclusion in an analogous area of law. Protecting these types of communications and documents from disclosure is not unlike the protection afforded by the attorney work-product privilege. (See *Hickman v. Taylor* (1947), 329 U.S. 495, 91 L. Ed. 451, 67 S. Ct. 385; *Monier v. Chamberlain* (1966), 35 Ill. 2d 351.) Our Rule 201 states, in part, that "[m]aterial prepared by or for a party in preparation for trial is subject to discovery only if it does not contain or disclose the theories, mental impressions, or litigation plans of the party's attorney." (107 Ill. 2d R. 201(b)(2).) Although the strategy sessions conducted by the school district here are not "litigation plans," the sessions are preparation for adversarial proceedings—labor negotiations. Rule 201 does not, of course, apply directly to the issue in this case. Nevertheless, the similarity between adversarial litigation covered by Rule 201 and the adversarial labor negotiations here lends support to our conclusion that a privilege must exist.

The privilege created in this appeal is at least a qualified one. The parties to this case do not contend in this court that an absolute privilege should be fashioned. In the proceeding to enforce the subpoena in the circuit court, the parties were the Illinois Educational Labor Relations Board and the school district. The Association was granted leave to intervene. The Board petitioned for leave to appeal to this court from the holding of the ap-

pellate court. In this court, neither the appellant (Board) nor the appellee (school district) questioned the existence of a qualified privilege, as the appellate court found. The only issue raised and argued by the appellant and appellee in this court is whether the circuit court or the Board should conduct the *in camera* examination of the material sought to be discovered, and determine the extent of the privilege.

The intervening Association did not petition for leave to appeal from the appellate court's holding that a qualified privilege exists. However, in this court the Association contends that the creation of a common law privilege is not necessary and raises this issue pursuant to our Rule 318 (107 Ill. 2d R. 318(a)), which provides that in all appeals from the appellate court to the supreme court, any appellee, respondent, or coparty may seek and obtain any relief warranted by the record on appeal without having filed a separate petition for leave to appeal or notice of cross-appeal or separate appeal. Since we have addressed the question of the existence of a privilege, we need not decide whether the Association can properly raise that issue under our Rule 318. The Illinois Association of School Boards was granted leave to file a brief as *amicus curiae* in this court in support of the school district. In the *amicus curiae* brief, it is argued that the privilege should be absolute and not qualified, urging the adoption of the holding of Justice McCullough in his dissent in this case in the appellate court (160 Ill. App. 3d at 743 (McCullough, J., dissenting)). This opinion does not hold that this is a qualified privilege; we are deciding only the issue before us, which is who should conduct the *in camera* examination. Since the parties to this appeal have not raised the question as to whether the privilege should be absolute or qualified, we decline to address the issue.

Because the parties have accepted the appellate court's holding, we affirm that court's decision that a qualified privilege exists in this case. Therefore, because the privilege has been treated as a qualified one, on remand the privilege may be overcome by a showing of necessity. The Court of Appeals for the Seventh Circuit best articulated what must be shown to defeat a qualified privilege:

"Before determining whether to compel disclosure of materials covered by the qualified privilege, the court must apply a balancing test to determine whether the need of the party seeking disclosure outweighs the adverse effect such disclosure would have on the policies underlying the privilege. [Citations.] Under the 'particularized need' standard, 'a party's need varies in proportion to the degree of access he has to other sources of information he seeks.' [Citation.] A party must conduct thorough and exhaustive discovery to exploit each and every possible source of information prior to seeking those materials protected by the qualified privilege. 'Exploratory' searches will not be condoned. Similarly, the mere fact that certain information may be relevant or useful does not establish a 'particularized need' for disclosure of information. [Citations.] The party seeking disclosure of the privileged information must show a 'compelling necessity' for the *specific* information requested. [Citations.]" (Emphasis in original.) *Equal Employment Opportunity Comm'n v. University of Notre Dame Du Lac* (7th Cir. 1983), 715 F.2d 331, 338.

Finally, we must address the issue of which body will perform an *in camera* examination of the allegedly privileged materials to determine if in fact the requested materials are privileged, which is the primary issue raised by the parties in this court. The appellate court ruled that the circuit court must perform the *in camera* examination; the Board, on the other hand, urges that we remand this case back to it for the necessary inspection. We affirm the decision of the appellate court that the cir-

cuit court must examine the materials sought to be cloaked by the privilege.

We agree with the appellate court that the reason the circuit court should perform the *in camera* examination is that the circuit court is in a position of detachment. While the Board might decide that the materials sought to be discovered are privileged and thus inadmissible, it would nevertheless be placed in an awkward position of having seen the materials but yet having to disregard them in adjudicating the unfair labor practice complaint. Moreover, a party to a labor dispute might fear that the Board would be subtly influenced if the Board were to view the privileged materials. Allowing the circuit court to examine the materials relieves the Board of the burden of having to disregard privileged materials. The Board argues that a judge is often put in the position of having to conduct an *in camera* examination of evidence in a case which he must ultimately decide. The Board argues that it can perform in the same impartial manner as judges. The appellate court in this case addressed this argument, and we adopt the explanation given by the appellate court as to why, in the circumstances of this case, it should be rejected:

> "Judges are often placed in situations where they must become privy to information which is prejudicial to a party but is not subject to consideration in deciding the merits of a dispute. This creates an awkward situation which should be avoided when that can reasonably be done. The situation here would be even more difficult for the Board if it was to become privy to the matters disclosed in the *in limine* hearing and then decide the merits of the case. We have held that information involving the bargaining strategy sessions does not become discoverable merely because it is relevant. It must meet the necessity standard. A great burden would be placed on the Board if, after hearing what happened in the various meetings, it is then required to make a decision on the

merits without considering matters which do not meet the necessity standard.

The Board need not be put into this position and the party subject to a discovery order need not be subjected to fears that the Board would be subtly influenced. The circuit court is placed in a rare position of detachment in making the decision as to the discovery to be required and the Board will then be placed in a position of detachment in deciding the merits." (160 Ill. App. 3d at 741-42.)

Bifurcating the process between the Board and the circuit court would preserve the administrative process from any possibility of decisions influenced by inadmissible evidence.

In this case, the *in camera* inspection of evidence is a most critical phase of the labor dispute. If records of bargaining strategy and objectives are incorrectly revealed, then the ultimate outcome of the negotiations is determined, regardless of the Board's decision on the unfair labor charge. Once the Association gains access to the school district's bargaining goals, then the matter in controversy is prejudiced. We find that the circuit court is the appropriate forum to oversee this critical phase of the administrative process.

Finally, although the Board argues that it is vested with particular expertise in labor law matters, we believe that the circuit court has more experience in deciding questions of evidence, including issues involving privileges. Trial judges rule on evidentiary matters daily in their courtrooms. While it is true that the Board's forte is the field of labor law, the issue in this case is primarily one of evidence and not labor law.

The issue before the court involves the enforcement of the subpoena. The Board instituted an action in the circuit court for that purpose. This case is now on appeal from the order of that court. It would seem appropriate that the court, and not the Board, should make the deci-

sion as to the extent to which the subpoena should be enforced.

For the reasons stated above, we affirm the judgment of the appellate court, and reverse the judgment of the circuit court, and remand this cause to the circuit court of Champaign County to perform the necessary *in camera* examination in accordance with this opinion.

*Appellate court affirmed;*
*circuit court reversed;*
*cause remanded with instructions.*

JUSTICE CLARK, dissenting:

I must respectfully dissent because I believe that the Illinois Educational Labor Relations Board (Board), rather than the circuit court, should make the *in camera* determination as to whether the materials protected by the qualified privilege should be disclosed.

Under the Illinois Educational Labor Relations Act (the Act) (Ill. Rev. Stat. 1987, ch. 48, par. 1705(h)), the Board is required to adopt rules and regulations regarding its procedures in accordance with the Illinois Administrative Procedure Act (the Administrative Procedure Act) (Ill. Rev. Stat. 1987, ch. 127, par. 1001 *et seq.*). Section 12 of the Administrative Procedure Act provides that in adjudicatory proceedings before administrative agencies, "[t]he rules of evidence and *privilege* as applied in civil cases in the Circuit Courts of this State shall be followed." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 127, par. 1012(a).) It is implicit from the language of section 12 of the Administrative Procedure Act that the General Assembly intended that administrative agencies themselves apply the rules of privilege in ruling on evidentiary questions. Accordingly, the Board, like many other agencies in Illinois, has promulgated rules governing privileged materials. (80 Ill. Admin. Code §1100.70 (1985); see also 32 Ill. Admin. Code §200.170

(1987) (Department of Energy and Natural Resources); 35 Ill. Admin. Code §168.270 (1985) (Environmental Protection Agency); 50 Ill. Admin. Code §2402.210 (1985) (Department of Insurance); 83 Ill. Admin. Code §200.610 (1987) (Illinois Commerce Commission).) Under each of these agency's rules, the determination concerning the admissibility or discoverability of the allegedly privileged information is made by the agency.

Nevertheless, the majority takes the unprecedented step of holding that in this instance, the question of discoverability cannot be left to the Board, but rather must be decided by the circuit court. The basis for this decision is the majority's fear that the Board will not be able to properly perform its adjudicatory function. According to the majority, the Board will be unable to disregard materials which it rules are inadmissible (132 Ill. 2d at 43-44), and will be unable to correctly apply the "necessity" standard in deciding whether privileged materials should be disclosed (132 Ill. 2d at 43-44).

The problem with the majority's analysis is that it smacks of judicial snobbery. There is simply no reason to believe that the Board would be incapable of disregarding inadmissible evidence or would be likely to make incorrect decisions. More importantly, however, is that even if the majority's fears did have some basis, it is not our role to speculate as to the competence of administrative agencies. Rather, that role belongs to the General Assembly, which, in giving administrative agencies the authority to adjudicate disputes and the responsibility to make evidentiary rulings, must have believed that agencies would be competent to perform such functions. Unless the delegation of adjudicatory powers violates the separation of powers doctrine, this court should not interfere with the General Assembly's choice.

In this case, it is clear that in enacting the Illinois Educational Labor Relations Act, the General Assembly

decided that the Board, rather than the circuit court, should adjudicate public educational labor disputes. This court has held that this delegation of adjudicatory powers to the Board does not violate the separation of powers doctrine. (See *Board of Education of Warren Township High School District 121 v. Warren Township High School Federation of Teachers, Local 504* (1989), 128 Ill. 2d 155, 165-66.) It therefore must be presumed that the General Assembly believed that the Board would be able to disregard inadmissible evidence and properly rule on evidentiary questions, a belief that this court should not second-guess.

A second problem with the majority's decision is that one of purposes of the Act is to provide for the expeditious resolution of public educational labor disputes. (Ill. Rev. Stat. 1987, ch. 48, par. 1701.) This purpose, however, will be frustrated by the majority's approach. Under the majority's approach, where a claim of privilege has been made, the circuit court will have to familiarize itself with the discovery that has already taken place in the case as well as the facts and issues underlying the dispute before it can determine whether there is a "compelling necessity" for the information requested. The resulting delay, as well as "the delays inherent in the circuit court calendar" (160 Ill. App. 3d at 743 (Lund, J., specially concurring)), will only prolong the time it takes to resolve the underlying dispute. These delays would be avoided by having the Board decide whether the privileged material is discoverable, since the Board would already be familiar with the case.

The final shortcoming in the majority's opinion is its contention that the circuit court should make the *in camera* determination because otherwise "a party to a labor dispute might fear that the Board would be subtly influenced if the Board were to view the privileged materials." (132 Ill. 2d at 43.) This fact alone, it seems to

me, scarcely justifies the extreme measure taken by the majority in this case. Nor does the argument, which is implicit in the majority's opinion, that parties to collective bargaining would be reluctant to discuss bargaining strategy for fear that their statements would be used against them by the Board in reaching its decision (132 Ill. 2d at 35, 43) provide a sufficient justification for the majority's decision. Even if we were to assume that this were true, the only way in which the Board could use privileged information against a party would be if that information indicated that the party was negotiating in bad faith. Thus, the only chilling effect that could conceivably occur would be the potential prevention of bad-faith negotiating strategizing. Such an effect, however, would further the goals of the Illinois Educational Labor Relations Act, which, among other things, imposes upon public educational employers and employees an affirmative obligation to negotiate in good faith (Ill. Rev. Stat. 1987, ch. 48, par. 1710(a)), and makes the refusal to do so an unfair labor practice (Ill. Rev. Stat. 1987, ch. 48, par. 1714(a)(5)).

The majority's decision will have consequences reaching far beyond the context of educational labor disputes. I fail to perceive, and the majority does not explain, why the privilege in this case should be treated differently than any other privilege. Parties claiming a privilege in future administrative proceedings will seek, and under the majority's reasoning should be entitled, to have the issue resolved in the circuit court rather than the agency, thus upsetting the heretofore well-settled procedure used to decide questions of privilege in administrative proceedings. This judicial interference in administrative proceedings whenever a claim of privilege is raised will both add to the circuit court's already overburdened docket and cause needless delay in the agency's resolution of

the dispute which gave rise to the underlying proceeding.

Because I believe that the Board should conduct the *in camera* inspection and determine whether materials protected by the collective bargaining privilege should be discoverable, I respectfully dissent.

JUSTICE CALVO joins in this dissent.