ILLINOIS LABOR RELATIONS BOARD, Petitioner-Appellee, v. CHICAGO TRANSIT AUTHORITY, Respondent-Appellant (Amalgamated Transit Union Local 241, Intervenor-Appellee).

First District (5th Division)   No. 1—02—1791

Opinion filed June 30, 2003.

Bell, Boyd & Lloyd, L.L.C., of Chicago (James P. Daley and David M. Novak, of counsel), for appellant.

Lisa Madigan, Attorney General (Joel D. Bertocchi, Solicitor General, and Mary Patricia Kerns, Assistant Attorney General, of counsel), Carmell, Charone, Widmer, Mathews & Moss (Lisa B. Moss and Jacqueline L. Bachman, of counsel), both of Chicago, for appellees.

JUSTICE QUINN delivered the opinion of the court:

In May 2001, intervenor Amalgamated Transit Union Local 241 (Union) filed an unfair labor practice charge against respondent Chicago Transit Authority (CTA) with petitioner Illinois Labor Relations Board (ILRB). After the ILRB issued an administrative subpoena requesting potentially privileged documents relating to the CTA's collective bargaining strategies, the CTA moved to revoke the subpoena. An administrative law judge (ALJ) with the ILRB ruled that the CTA must produce the requested documents and that an ALJ other than himself would conduct an *in camera* inspection to determine the extent of the privilege. The CTA refused to comply with the ALJ's ruling and the ILRB filed a petition with the circuit court seeking enforcement of its subpoena. The circuit court affirmed the ruling of the ALJ. On appeal, the CTA contends that the trial court, rather than an ALJ, must make the determination as to whether the requested documents are privileged. For the reasons set forth below, we reverse the judgment of the trial court.

## BACKGROUND

In its charge filed with the ILRB, the Union alleged that the CTA had violated various provisions of the Illinois Public Labor Relations Act (5 ILCS 315/1 *et seq.* (West 2000)) (Labor Relations Act). The basis of the charge was the CTA's alleged refusal to sign a collective bargain-

ing agreement that had been negotiated with the Union. According to the Union, the CTA had attempted to add new terms and conditions that had either been rejected during negotiations or never proposed. After conducting an investigation into the Union's charges, the ILRB issued a complaint for hearing and the case was assigned to an ALJ. The ILRB subsequently issued a subpoena ordering the CTA to produce documents in existence since January 1, 2001, including "[a]ny and all bargaining notes taken by" various CTA representatives and "[a]ny and all notes or memoranda concerning collective bargaining with Local 241 for a successor agreement, except those privileged as attorney-client communications or attorney work product."

In response to the subpoena, the CTA filed a motion with the ILRB to revoke the subpoena, arguing that many of the requested materials related to its bargaining strategies and were therefore privileged. In support of this assertion, the CTA relied upon the supreme court's decision in *Illinois Educational Labor Relations Board v. Homer Community Consolidated School District No. 208*, 132 Ill. 2d 29 (1989). The CTA further argued that in accordance with the *Homer* decision, only the circuit court was permitted to determine whether the requested notes contained privileged materials.

When ruling on the motion to revoke, the ALJ noted that absent a respondent's refusal to comply with an order to produce, the Labor Relations Act did not provide a procedure allowing the circuit court to make rulings with respect to allegedly privileged materials. Addressing the concern in *Homer* that the person or entity called upon to decide the substantive merits of a case should not also decide issues relating to the bargaining strategy privilege, the ALJ ordered the CTA to produce the requested bargaining notes to another ALJ with the ILRB for an *in camera* inspection to determine the extent of the privilege.

After the CTA refused to comply with the ILRB's order to turn the requested materials over to a different ALJ, the ILRB filed a petition in the circuit court to enforce its administrative subpoena pursuant to section 11(b) of the Labor Relations Act (5 ILCS 315/11(b) (West 2000)). The CTA moved to dismiss the ILRB's petition pursuant to section 2—615 of the Illinois Code of Civil Procedure (735 ILCS 5/2—615 (West 2000)) (Civil Code), arguing that the petition was substantially insufficient in law because the circuit court, rather than the ILRB, should perform the *in camera* inspection. The Union, which was allowed to intervene in the action, and the ILRB filed responses to the CTA's motion to dismiss, wherein they argued the *Homer* case was inapplicable and that requiring an independent ALJ to conduct the *in*

*camera* inspection prevented unnecessary delay and was appropriate under various provisions of the Labor Relations Act.

After hearing argument of counsel, the trial court denied the CTA's motion to dismiss and ordered the CTA to comply with the subpoena by turning over the requested documents to an ALJ not assigned to the case for an *in camera* inspection to allow the ALJ to rule on matters relating to privilege. The trial court later stayed enforcement of its order pending this appeal filed by the CTA.

## ANALYSIS

On appeal, the CTA contends that the trial court erred in denying its motion to dismiss the ILRB's petition for enforcement of administrative subpoena. It first argues that because this case is controlled by *Homer*, only the circuit court can review the potentially privileged documents requested by the ILRB. The CTA further argues that the ALJ's ruling that an ALJ with the ILRB other than himself should review the documents *in camera* and make a determination as to the extent of privilege amounts to improper administrative rulemaking. See *Panhandle Eastern Pipe Line Co. v. Environmental Protection Agency*, 314 Ill. App. 3d 296, 303 (2000) ("Administrative agencies are required to apply their rules as written, without making *ad hoc* exceptions in adjudications of particular cases").

■ This case is before us based upon the trial court's ruling on the CTA's motion filed pursuant to section 2—615 of the Civil Code, wherein it was argued that the ILRB's petition for enforcement was substantially insufficient in law. See 735 ILCS 5/2—615(b) (West 2000). A motion to dismiss for defects in the pleadings when the complaint is substantially insufficient in law attacks the legal sufficiency of the complaint and is solely based on defects appearing on the face of the complaint. *Aboufariss v. City of De Kalb*, 305 Ill. App. 3d 1054, 1066 (1999). Our review of the denial of a section 2—615 motion to dismiss is *de novo*. *Stratman v. Brent*, 291 Ill. App. 3d 123, 134 (1997), citing *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993).

■ This case is before us based upon the circuit court's powers to enforce administrative subpoenas under section 11(b) of the Labor Relations Act, which provides:

> "The Board shall have the power to issue subpoenas and administer oaths. If any party wilfully fails or neglects to appear or testify or to produce books, papers and records pursuant to the issuance of a subpoena by the Board, the Board may apply to a court of competent jurisdiction to request that such party be ordered to appear before the Board to testify or produce the requested evidence." 5 ILCS 5/315—11(b) (West 2000).

■ A statute should be interpreted and applied based upon the language contained in the statute. See *City of East St. Louis v. East St. Louis Financial Advisory Authority*, 188 Ill. 2d 474, 480 (1999). A statute should not be rewritten by a court to make it consistent with the court's idea of orderliness and public policy. *Lawrence v. Regent Realty Group, Inc.*, 197 Ill. 2d 1, 11 (2001).

In *Homer*, a school district and an education association both filed charges with the Illinois Educational Labor Relations Board (IELRB) alleging bad-faith bargaining. After the education association requested documents from the school district relating to the school district's collective bargaining strategy, the school district filed a motion with the IELRB to preclude discovery of the information, claiming the evidence was privileged. The IELRB denied the motion, issued a subpoena to compel production of the documents and moved to enforce the subpoena in the circuit court pursuant to section 15 of the Illinois Educational Labor Relations Act, which provided:

> "If any party wilfully fails or neglects to appear or testify or to produce books, papers and records pursuant to subpoena issued by the Board, the Board shall apply to the circuit court for an order to compel the attendance of the party at the hearing to testify or produce requested documents." Ill. Rev. Stat. 1985, ch. 48, par. 1715.

The circuit court ordered that the subpoena be enforced and the school district appealed. The appellate court reversed in a split decision and the IELRB appealed its ruling. The supreme court first ruled that the requested documents were subject to a qualified privilege. *Homer*, 132 Ill. 2d at 42. The supreme court then went on to decide "which body will perform an *in camera* examination of the allegedly privileged materials to determine if in fact the requested materials are privileged." *Homer*, 132 Ill. 2d at 42. In ruling on this issue, the supreme court stated:

> "We agree with the appellate court that the reason the circuit court should perform the *in camera* examination is that the circuit court is in a position of detachment. While the [IELRB] might decide that the materials sought to be discovered are privileged and thus inadmissible, it would nevertheless be placed in an awkward position of having seen the materials but yet having to disregard them in adjudicating the unfair labor practice complaint. Moreover, a party to a labor dispute might fear that the [IELRB] would be subtly influenced if the [IELRB] were to view the privileged materials. Allowing the circuit court to examine the materials relieves the [IELRB] of the burden of having to disregard privileged materials. The [IELRB] argues that a judge is often put in the position of having to conduct an *in camera* examination of evidence in a case

which he must ultimately decide. The [IELRB] argues that it can perform in the same impartial manner as judges. The appellate court in this case addressed this argument, and we adopt the explanation given by the appellate court as to why, in the circumstances of this case, it should be rejected:

'Judges are often placed in situations where they must become privy to information which is prejudicial to a party but is not subject to consideration in deciding the merits of a dispute. This creates an awkward situation which should be avoided when that can reasonably be done. The situation here would be even more difficult for the [IELRB] if it was to become privy to the matters disclosed in the *in limine* hearing and then decide the merits of the case. We have held that information involving the bargaining strategy sessions does not become discoverable merely because it is relevant. It must meet the necessity standard. A great burden would be placed on the [IELRB] if, after hearing what happened in the various meetings, it is then required to make a decision on the merits without considering matters which do not meet the necessity standard.

The [IELRB] need not be put into this position and the party subject to a discovery order need not be subjected to fears that the [IELRB] would be subtly influenced. The circuit court is placed in a rare position of detachment in making the decision as to the discovery to be required and the [IELRB] will then be placed in a position of detachment in deciding the merits.' (160 Ill. App. 3d at 741-42.)" *Homer*, 132 Ill. 2d at 43-44.

The supreme court also rejected the IELRB's argument that it should rule on the privilege issue because it was vested with particular knowledge in labor law matters, stating that "the circuit court has more experience in deciding questions of evidence, including issues involving privileges." *Homer*, 132 Ill. 2d at 44.

■ The CTA argues, and we agree, that the *Homer* case mandates reversal of the circuit court's order. Initially, because section 11 of the Labor Relations Act and section 15 of the Educational Labor Relations Act are so similar, no different result should be reached with respect to the entity that should determine the applicability of the bargaining strategy privilege. The CTA correctly argues that because the ILRB is a small agency, the concerns addressed in *Homer* that the IELRB could be influenced if it were to review the potentially privileged documents are only slightly ameliorated by the circuit court's order that an ALJ other than the one presiding over the labor dispute should rule on the privilege issues. This is particularly true given the importance of confidentiality the supreme court in *Homer* assigned to collective bargaining strategy and the possibility that an ALJ ruling

on matters of privilege might later be called upon to decide the merits of subsequent claims involving bad-faith negotiating on the part of the CTA. Furthermore, the *Homer* case supports the CTA's assertions that the circuit court remains uniquely detached from the ILRB and that judges at the circuit court level possess greater expertise in ruling on matters relating to privilege.

The Union and ILRB argue that the statutory and regulatory provisions governing the issuance of subpoenas by the ILRB specifically contemplate that questions of privilege will be considered and decided by the agency. In support of this claim, the Union and ILRB direct this court to section 11 of the Labor Relations Act, which grants the ILRB authority to issue subpoenas and seek judicial enforcement of them and provides that the ILRB and its agents are bound by "the rules of privilege recognized by law." 5 ILCS 315/11(a) (West 2000). They also cite section 1200.90 of the Illinois Administrative Code, which is applicable to the ILRB and states that "[g]rounds for revocation of a subpoena shall include irrelevance, burdensomeness and privilege." 80 Ill. Adm. Code § 1200.90(b) (2001). The Union and ILRB also assert that ALJs are competent to adjudicate privilege issues and that to require the trial court to make rulings relating to privilege undermines the purpose of the Labor Relations Act to promote expeditious resolutions of labor disputes. See 5 ILCS 315/2 (West 2000).

These arguments raised by the ILRB and Union were similarly raised in Justice Clark's dissent in *Homer*. For instance, Justice Clark cited section 12 of the Administrative Procedure Act, which provided that in adjudicatory proceedings before administrative agencies, " '[t]he rules of evidence and *privilege* as applied in civil cases in the Circuit Courts of this State shall be followed.' (Emphasis added.)" *Homer*, 132 Ill. 2d at 45 (Clark, J., dissenting, joined by Calvo, J.), quoting Ill. Rev. Stat. 1987, ch. 127, par. 1012(a). Justice Clark concluded that "the General Assembly intended that administrative agencies themselves apply the rules of privilege in ruling on evidentiary questions." *Homer*, 132 Ill. 2d at 45 (Clark, J., dissenting, joined by Calvo, J.).

As for the *Homer* majority's holding that the IELRB should not review the requested material because to do so would hinder its ability to later perform its adjudicatory function, the dissenters referred to this conclusion as "judicial snobbery" and stated that "[t]here is simply no reason to believe that the [IELRB] would be incapable of disregarding inadmissible evidence or would be likely to make incorrect decisions." *Homer*, 132 Ill. 2d at 46 (Clark, J., dissenting, joined by Calvo, J.). The dissenters also opined that the majority's ruling would frustrate the purpose of the Illinois Educational Labor Relations Act (Ill. Rev. Stat. 1987, ch. 48, par. 1701) to provide for the

expeditious resolution of public educational labor disputes and rejected the notion that a party to a labor dispute would be subtly influenced if the IELRB were to view the privileged material.

The dissent in *Homer* supports our conclusion that the reasons advanced by the Union and the ILRB in support of affirming the trial court's ruling are without merit. Despite being aware of these alleged deficiencies in their reasoning, the majority in *Homer* nonetheless ruled that the circuit court, rather than the IELRB, must make rulings with respect to issues of privilege. After the supreme court has declared the law with respect to an issue, this court must follow that law because only the supreme court has authority to overrule or modify its decisions. See *Orr v. Edgar*, 298 Ill. App. 3d 432, 441-42 (1998). Therefore, we find that the trial court erred in ordering that an ALJ with the ILRB could review the subpoenaed documents in the instant case for purposes of ruling on matters of privilege relating to the CTA's collective bargaining strategy.

The ILRB next argues that because the *Homer* case did not address whether issues of privilege could be decided at the agency level by an ALJ other than the one rendering the ultimate decision on the merits, *Homer* cannot be cited by the CTA as precedent requiring the reversal of the circuit court's ruling. See *Board of Governors of State Colleges & Universities for Chicago State University v. Illinois Fair Employment Practices Comm'n*, 78 Ill. 2d 143, 149 (1979) ("A judicial opinion is authority only for what is actually decided"). Additionally, the Union and ILRB argue that any potential for bias by the decision maker is eliminated by having an ALJ other than the one assigned to hear the case rule on matters relating to privilege.

We reject both of these arguments. In *Homer*, after deciding that the materials requested by the IELRB implicated issues of privilege, the supreme court then stated "we must address the issue of which body will perform an *in camera* examination of the allegedly privileged materials." *Homer*, 132 Ill. 2d at 42. The two "bodies" were the trial court and the IELRB. At the time *Homer* was decided, the definitions section of the Educational Labor Relations Act provided that "Board," as used in that act, "means the Illinois Educational Labor Relations Board." Ill. Rev. Stat. 1985, ch. 48, par. 1702(e). Because ALJs clearly make up part of the IELRB, we interpret the supreme court's use of "body" to include all ALJs at the IELRB. That is certainly the case with respect to the ILRB. The Administrative Code states that "[t]he term 'Board' shall refer to the Illinois State Labor Relations Board and the Illinois Local Labor Relations Board or each Board individually as applicable, or an agent designated by the Board." 80 Ill. Adm. Code § 1200.10(c) (2001).

As for the final argument advanced by the ILRB and Union, the supreme court in *Homer* was clear in its pronouncement that the circuit court should make rulings on issues of privilege because it "has more experience in deciding questions of evidence, including issues involving privileges." *Homer*, 132 Ill. 2d at 44. Thus, regardless of whether the ALJ assigned to the case or a different ALJ reviews the allegedly privileged documents, the fact remains that *Homer* holds that circuit court judges are better qualified to rule on matters of privilege.

The CTA also argues that the trial court's judgment must be reversed because the ALJ's ruling is improper administrative rule-making. Because our ruling with respect to the first issue is dispositive of this appeal, we need not reach the CTA's second claim of error. *Chicago Tribune Co. v. Board of Education of the City of Chicago*, 332 Ill. App. 3d 60, 69 (2002).

Accordingly, the judgment of the circuit court of Cook County is reversed and this cause is remanded for further proceedings.

Reversed and remanded.

REID and HARTIGAN, JJ., concur.