(No. 57801.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ROBERT SANDERS, Appellee.

*Opinion filed December 16, 1983.*

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Michael B. Weinstein, Assistant Attorney General, and Michael E. Shabat, Marie Quinlivan, and Stephen Erhard Eberhardt, Assistant State's Attorneys, of Chicago, of counsel), for the People.

Ralph Ruebner, Deputy Defender, of the Office of the State Appellate Defender, of Chicago (Daniel D. Maynard, Laura N. Jasinsky, Charles R. Saulsberry, of Winston & Strawn, of counsel), for appellee.

JUSTICE SIMON delivered the opinion of the court:

The principal issue raised by this appeal is the construction and application to be given to the Illinois stat-

ute which prohibits husband and wife from testifying in criminal trials as to any communication or admission made one to the other or as to any conversation between them (Ill. Rev. Stat. 1981, ch. 38, par. 155—1). More precisely, the question is whether the privilege established by the statute is destroyed when the communication, admission or conversation in question is in the presence of children of the spouses (including a child of one of the spouses who is not the child of defendant) who are old enough to understand the content of the conversation. A secondary issue is whether the plain error rule (87 Ill. 2d R. 615) should be applied to the admission of testimony about two conversations between spouses which may not have occurred in the presence of children but where no objection was advanced when all that was said in them was repeated in a third conversation which took place a few hours later and concerning which testimony was admissible.

A murder conviction of the defendant, Robert Sanders, in a jury trial in the circuit court of Cook County based in part upon the testimony of his wife was reversed by the appellate court (111 Ill. App. 3d 1). We allowed the State's petition for leave to appeal (87 Ill. 2d R. 315(a)).

During pretrial discovery, the defense filed a motion *in limine* to prevent the defendant's wife, Beverly Sanders, from testifying about conversations she had with her husband, the defendant. Shortly after it was filed, the public defender's office, which had been representing the defendant, was replaced by other appointed counsel, who represented the defendant at trial. Defendant's new attorney did not seek a ruling on the motion *in limine,* and that motion was never ruled upon. Neither did defendant's attorney object at trial to the wife's testimony.

She testified to three conversations with her husband

which implicated him in the murder of which he was convicted. In the first conversation, which occurred the day before the murder, she testified the defendant told her while one or more of her children was present that he was going to rob the murder victim. The second conversation occurred in their bedroom in the early morning hours of the next day. During this conversation, at which no one else was present, the defendant gave his wife a ring and a watch which the woman who lived with the murder victim identified at trial as the victim's. The third conversation took place later that day. The defendant told her, she testified, that he had robbed the murder victim after striking him with a brick and tying him up. He also told her that he got the watch and ring during the robbery. This conversation, she said, was in the presence of their children.

The State argues that communications between spouses are privileged only when intended to be confidential. In this case the State contends the confidentiality of the first and third conversations was destroyed by the presence of their children. It contends that the second conversation was not confidential because the defendant must have expected that his wife would display the watch and ring he gave her by wearing them in public, and that he did not therefore intend his act to be confidential. The defendant argues that the record does not clearly show that their children were in the immediate presence of his wife and himself in a position to hear their first and third conversations, and that during the second communication he acted in reliance upon the expectation that what transpired would be confidential.

The starting point for our decision is the interpretation given in *People v. Palumbo* (1955), 5 Ill. 2d 409, to the statute relating to the admissibility of interspousal communications (Ill. Rev. Stat. 1981, ch. 38, par. 155—1). This court, in *Palumbo,* rejected the argument ad-

vanced by the defendant there that the statute covered all conversations between spouses, holding instead that the statutory privilege, like the similar common law privilege, applied only to conversations which were of a confidential character. The problem is to determine under what circumstances conversations between spouses are to be regarded as confidential in character. This court, in *Palumbo*, adopted the standards announced by the Supreme Court in *Wolfle v. United States* (1934), 291 U.S. 7, 14, 78 L. Ed. 617, 620, 54 S. Ct. 279, 280, a holding which the court 41 years later in *Trammel v. United States* (1980), 445 U.S. 40, 63 L. Ed. 2d 186, 100 S. Ct. 906, said remained undisturbed, by adopting language from *Wolfle* which teaches the following: There is a presumption that interspousal communications are intended to be confidential. But if, because of the circumstances under which the communication took place, it appears that confidentiality was not intended, the communication is not to be regarded as privileged. In this regard, communications made in the presence of third persons are usually not regarded as privileged because they are not made in confidence. In *Palumbo* the communication testified to by the wife was regarded as not privileged because the entire conversation took place in the presence of a third person who, according to the wife, was trying to purchase narcotics from the husband, who was the defendant in the case.

We agree with the appellate court's conclusion that the evidence establishes that the third conversation took place in the presence of her sons, Robert who was 13, and two others who were 10 and 8 at the time. On cross-examination the wife repeated her direct testimony, which is quoted at length in the appellate court opinion, that the three children were present during the third conversation when the following exchange took place:

"Q. Did you know anything about Curtiss Lovelace?
A. Only what my husband had told me.

> Q. You say he was bragging when he told you this?
> A. Yes.
> Q. He wasn't nervous, was he?
> A. Not until he found out the man was dead.
> Q. When he first told you was he nervous or bragging?
> A. Not nervous.
> Q. Pacing around the room?
> A. No, he wasn't.
> Q. Excited?
> A. No.
> Q. Who was present when this conversation occurred?
> A. Robert, Albert and Pee Wee.
> Q. They were all there?
> A. Yes."

Following this exchange there was another reference during her cross-examination to the presence of the wife's oldest son:

> "Q. And that day of the events that you have testified to, October the 14th, that day you had just finished a fight with your husband, right?
> A. Yes.
> Q. Did he threaten your son, Robert, in any way at that time?
> A. No.
> Q. But during all of these conversations, Robert, your son, was present, right?
> A. Yes, he was."

The question presented in this case is whether the communications fell outside the ambit of the statute's protection because of the presence of the children. We have found no Illinois case holding that the confidentiality of a conversation between a husband and wife is preserved when it takes place in the presence of children. The appellate court appears to have exhaustively researched the subject and concluded, as we do, that the great weight of authority is that the presence of children of the spouses destroys confidentiality unless they are too young to under-

stand what is being said. (See, *e.g.*, *Master v. Master* (1960), 223 Md. 618, 166 A.2d 251; *Freeman v. Freeman* (1921), 238 Mass. 150, 130 N.E. 220; *Fuller v. Fuller* (1925), 100 W. Va. 309, 130 S.E. 270; McCormick, *Evidence* sec. 80, at 166 (2d ed. 1972); 97 C.J.S. *Witnesses* sec. 271, at 777 (1957).) Nothing in the record indicates that Robert, then 13 years old, was not old enough or sufficiently bright to understand the conversation at which he was present, particularly inasmuch as the wife's testimony indicates that some of it was directed to him. In these circumstances, under the rule followed in this State, his presence rendered the conversation ineligible for the protection of the statutory privilege.

The defendant argues that this court should recognize a privilege, which he concedes does not presently exist in Illinois, between parents and children which would include conversations between spouses at which their children are present. Courts in a few other jurisdictions have cloaked communications between parent and child with a privilege. (*In re Agosto* (D. Nev. 1983), 553 F. Supp. 1298; *People v. Fitzgerald* (1979), 101 Misc. 2d 712, 422 N.Y.S.2d 309.) The source of all privileges currently applicable in Illinois, with the exception of the attorney-client privilege which has a long-standing common law existence, is statutory. (See Ill. Rev. Stat. 1981, ch. 51, par. 5.1, Ill. Rev. Stat. 1981, ch. 38, par. 104—14 (physician-patient); Ill. Rev. Stat. 1981, ch. 51, par. 48.1 (clergymen); Ill. Rev. Stat. 1981, ch. 91½, par. 810 (therapist-client); Ill. Rev. Stat. 1981, ch, 111, par. 5533 (accountants); Ill. Rev. Stat. 1981, ch. 51, par. 5.2 (rape crisis personnel-victims); Ill. Rev. Stat. 1981, ch. 48, par. 640 (public officers, regarding unemployment compensation).) We decline, therefore, to introduce an additional privilege by judicial authority which would be applicable to communications between parents and children. Even if we were to initiate this type of privilege, to assist the defendant here we would have to extend it to children

of only one spouse, for Robert, the oldest and presumably the most discerning of the children and who was privy at least to the third conversation, was the son of the wife and not the defendant. The statute by its terms does not contemplate such a stretch. Were we to recognize such a privilege under our judicial authority, it would be impossible to contain it logically from spreading to conversations with other relatives in whom a person might normally confide, or even to close friends.

Moreover, we are constrained not only by the legislature's lack of interest in extending an interspousal communications privilege to communications between parent and child, but also by the fact that evidentiary privileges of this sort exclude relevant evidence and thus work against the truthseeking function of legal proceedings. In this they are distinct from evidentiary rules, such as the prohibition against hearsay testimony, which promote this function by insuring the quality of the evidence which is presented. The privilege at issue here results not from a policy of safeguarding the quality of evidence at trial but from a policy of promoting family harmony independent of what might occur in a trial at some future date. The Supreme Court in *Trammel v. United States* (1980), 445 U.S. 40, 50, 63 L. Ed. 2d 186, 195, 100 S. Ct. 906, 912, has stated:

> "Testimonial exclusionary rules and privileges contravene the fundamental principle that ' "the public ... has a right to every man's evidence." ' *United States v. Bryan* [(1950), 339 U.S. 323, 331, 94 L. Ed. 884, 891, 70 S. Ct. 724, 730.] As such, they must be strictly construed and accepted 'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.' *Elkins v. United States* [(1960), 364 U.S. 206, 234, 4 L. Ed. 2d 1669, 1695, 80 S. Ct. 1437, 1454] (Frankfurter, J., dissenting)."

See also 8 J. Wigmore, *Evidence* sec. 2285, at 527-28 (1961).

The expansion of existing testimonial privileges and acceptance of new ones involves a balancing of public policies which should be left to the legislature. A compelling reason is that while courts, as institutions, find it easy to perceive value in public policies such as those favoring the admission of all relevant and reliable evidence which directly assist the judicial function of ascertaining the truth, it is not their primary function to promote policies aimed at broader social goals more distantly related to the judiciary. This is primarily the responsibility of the legislature. To the extent that such policies conflict with truthseeking or other values central to the judicial task, the balance that courts draw might not reflect the choice the legislature would make.

The defendant argues, however, that inasmuch as the Federal courts have recognized the right of privacy to be of constitutional dimension in the context of certain functions which are intimately associated with the family, we should hold that communications of a confidential nature between a parent and his child enjoy an evidentiary privilege under the Constitution which did not exist under the common law. The defendant points out that in *In re Agosto* (D. Nev. 1983), 553 F. Supp. 1298, and *People v. Fitzgerald* (1979), 101 Misc. 2d 712, 422 N.Y.S.2d 309, courts have recognized the sort of constitutionally based privilege sought to be invoked here.

We need not decide here, and we do not decide, whether the decisions in *In re Agosto* or *People v. Fitzgerald* were sound, for the question in both of those cases was whether a parent or a child could be compelled against his will to testify against the other. (See also *In re A and M* (1978), 61 App. Div. 2d 426, 403 N.Y.S.2d 375 (same).) The testimony in the instant case, by contrast, was given by the defendant's wife, without protest and apparently of her own free will, after she was approached and requested to give it by an assistant State's Attorney.

We find this difference to be significant. Both *Agosto* and the New York courts, in holding that a constitutional privilege protected the communications there at issue, relied heavily on conjecture that a family member who is forced to testify against her will would face the unpleasant choice of aiding the criminal conviction of a loved one, perjuring herself on the stand, or risking a citation for contempt of court for refusing to testify, and the belief that the harshness of this choice has the effect of sundering the family relationship. (*In re Agosto* (D. Nev. 1983), 553 F. Supp. 1298, 1309-10, 1326; *In re A and M* (1978), 61 App. Div. 2d 426, 432-33, 403 N.Y.S.2d 375, 380.) Such a fear is without foundation where, as in this case, the witness who is a family member volunteers her testimony; the voluntariness of the act is strong evidence that the choice the witness faced was an easy one for her to make. We conclude that even if the Constitution bestows a privilege on communications between a parent and a child, an issue which we do not decide here, that privilege may be waived by the testifying witness acting alone. Compare *United States v. Penn* (9th Cir. 1980), 647 F.2d 876, 882 (rejecting a challenge to a child's voluntary testimony based on due process, on which the right to privacy depends).

Although they were the subject of the motion *in limine* which was never ruled upon, no objection was advanced at trial when the wife testified about the first and second conversations. Under *Palumbo* the Illinois statute preventing testimony by either spouse concerning confidential communications between them creates only a privilege, and a privilege may be waived by the holder of it, in this case the husband. (See Comment, *Marital Privileges*, 46 Chi.-Kent L. Rev. 71, 82-83 (1969).) Therefore, in order to affirm the appellate court's reversal of the conviction, we would have to conclude that the court properly applied the plain error doctrine (87 Ill. 2d R. 615) in holding that testimony regarding the first two conversations was improperly admit-

ted. We believe the appellate court erred in reaching that conclusion.

The plain error doctrine is properly applied only when the question of guilt is close and the evidence in question might have significantly affected the outcome of the case (*People v. Jackson* (1981), 84 Ill. 2d 350, 359; *People v. Pickett* (1973), 54 Ill. 2d 280, 283), or where the error alleged is so substantial as to reflect on the fairness or impartiality of the trial regardless of how closely balanced the evidence is (*People v. Baynes* (1981), 88 Ill. 2d 225, 233-34, 244; *People v. Roberts* (1979), 75 Ill. 2d 1, 14). The third conversation which we conclude, as the appellate court did, was properly admitted, incorporated substantially all of what was said in the first two conversations. The defendant, in the third conversation, discussed the robbery of the murder victim, said he hit him over the head with a brick, displayed several items of clothing taken from the victim, and referred to the watch and ring he had given his wife earlier that day. Thus, even conceding that no one overheard the first two conversations and that they were privileged and should have been excluded had timely objections been made, in practical effect they did no more than duplicate the incriminating content of the third conversation which was properly admitted. For that reason, the testimony which narrated the defendant's conversation and conduct during the first two conversations was not prejudicial. It added nothing to the third conversation that was needed by the prosecutor to implicate the defendant, and after the third conversation was in evidence, the evidence as to the defendant's guilt was no longer closely balanced.

Nor do we regard any errors that might have been made concerning the admissibility of the first and second conversations as depriving the accused of the substantial means of enjoying a fair and impartial trial (*People v. Roberts* (1979), 75 Ill. 2d 1, 14, citing *People v. Burson* (1957), 11 Ill. 2d 360, 370-71; see *People v. Whitlow* (1982),

89 Ill. 2d 322, 342), as the admission of polygraph evidence does (see *People v. Baynes* (1981), 88 Ill. 2d 225, 244). As we have noted, the husband-wife testimonial privilege operates not to purge a trial of unreliable evidence but to withhold relevant and often highly reliable evidence from the trier of fact. The decision whether to apply the plain error doctrine where the evidence is not close is one of grace. (*People v. Roberts* (1979), 75 Ill. 2d 1, 14; *People v. Burson* (1957), 11 Ill. 2d 360, 370-71.) We believe it should not have been applied here, for the fairness and impartiality of the *trial* was not substantially compromised by the errors, if any took place. See *People v. Roberts* (1979), 75 Ill. 2d 1, 14-15.

The defendant has raised a number of other issues, none of which were considered by the appellate court because of its erroneous reversal of the conviction on the ground of improper use of privileged communications. The judgment of the appellate court is reversed and the cause is remanded to that court for disposition of the issues raised by the defendant but not reached by its original decision. See *People v. Simpson* (1977), 68 Ill. 2d 276, 284.

*Reversed and remanded,*
*with directions.*