THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
STEVEN VALKO, Defendant-Appellant.

First District (6th Division)   No. 1—87—2855

Opinion filed July 6, 1990.

Randolph N. Stone, Public Defender, of Chicago (Scott J. Frankel and James H. Reddy, Assistant Public Defenders, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, Joseph Brent, and Tyra H. Taylor, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RAKOWSKI delivered the opinion of the court:

Following a jury trial, defendant Steven Valko was found guilty of three counts of aggravated criminal sexual assault (Ill. Rev. Stat. 1987, ch. 38, par. 12—14(b)(1)) and three counts of intimidation (Ill. Rev. Stat. 1987, ch. 38, par. 12—6). He was sentenced to concurrent terms of seven years on each count of aggravated criminal sexual assault and four years on each count of intimidation.

On appeal, he contends: (1) reversible error occurred when the complainant's mother testified about details regarding the complaint which her son told her six months after the alleged offense; (2) reversible error occurred when the complainant's mother testified that she believed her son when he told her about the alleged offense; (3) reversible error occurred when the State went beyond the evidence in closing and suggested why C. would not testify; and (4) that the State failed to prove defendant guilty beyond a reasonable doubt. We affirm in part and reverse in part.

The facts are these: Valko was convicted of aggravated criminal sexual assault on M., a nine-year-old boy, for three separate assaults: forcing M. to perform fellatio on him around Thanksgiving, 1984; forcing M. and M.'s 10-year-old uncle C. both to perform fellatio on him on New Year's Eve, 1984-85; and attempting penal-anal penetration on M. during January 1985. Valko was also sentenced for intimidation based on threatening statements made in connection with these episodes. In addition to the acts for which Valko was convicted, M. testified about episodes involving three-way oral sex between him, Valko, and C.; digital penetration of M. by Valko; and a video-taping by Valko during which he had C. perform anal sex on M.

In the opening statement at trial, the prosecutor said that the boy C. would not testify because "[h]e and his parents have decided they do not want him to relive the events of those days."

M.'s mother, the first witness, testified that she learned of the incidents on July 18, 1985. M. told her that he had been afraid to tell his mother sooner because she lived without a man in the house to protect her from being beaten up.

M. then recounted his story "in bits and pieces." According to M.'s mother, the boy was shaking and crying as he talked. He said that the night after Thanksgiving he had stayed at Valko's house and slept in the same bed with Valko and a boy named D. On that occasion, Valko grabbed M.'s head and forced him to have oral sex. According to M.'s mother, M. stated that he swallowed "the stuff that came out." Over the New Year's Eve holiday, M. stayed at Valko's home again and Valko forced M. and C. to have oral sex with each other while Valko watched. On another occasion, M.'s mother testified, M. complained that Valko crawled on top of him and "tried to put his penis in my butt hole." Finally, M.'s mother testified that her son told her about being forced to have anal sex in front of the video camera and an incident in the basement where Valko wanted M. and C. to have oral sex with him.

During M.'s mother's testimony, the defense objected twice to the narrative form of her answers to State questions. The judge overruled these objections. The defense also objected once when she stated that Valko "grabbed" one of the boys involved by the arm on the grounds that she had not actually witnessed the act. The judge overruled this objection on the grounds that M's mother was describing the act reported to her by M. The defense registered a continuing hearsay objection but did not object to the explicit detail used in M.'s mother's testimony.

On cross-examination, the defense asked M.'s mother if her son

ever lied to her and she said "yes." On redirect, the State asked if her son had ever lied about anything as important as the matter before the court. When she said "no," the prosecutor asked her if she believed her son in this matter. She said that she did.

M. testified that on Thanksgiving, 1984, he spent the night at Valko's home. He, Valko, and the boy D. slept in the same bed with Valko in the middle. Other children were asleep elsewhere in the house and Valko's wife was at work. During the night, Valko held M.'s head and forced him to have oral sex until "something splurted [sic] into my mouth. *** I spit it on the sheets." M. also stated that he heard D. snoring while the sex act occurred.

The next incident described by M. occurred on New Year's Eve, 1984-85. M. and C. went down to Valko's basement to get party things. Valko came to the basement and told both boys to kneel on the couch. Valko had the boys take turns performing fellatio on him. Valko did not ejaculate, and when the boys got tired and quit after a few minutes, Valko yelled at them. Then all three went upstairs. That night Valko slept with C. and M. but did not demand further sex acts.

M. further testified that a third incident occurred sometime within the next month or so. Valko, C. and M. were in the attic and C. started to talk about triangles. Valko suggested that they form a human triangle on the bed, take off their underwear, and perform oral sex on each other. During this act, Valko asked the boys to switch places. When it was over, he told M. that "something would happen" to him and his mother if the boy told anyone about the sex acts.

M. reported a fourth episode after he and C. had taken a shower. Valko suggested that they make a movie with his video camera. He had C. perform anal sex on M. Valko told both boys to smile even though M. claimed the act hurt. According to M., Valko also asked him to perform anal sex on C. but he did not.

During the same month, M. and Valko were alone in the attic when Valko reached over to M. and "stuck his finger down my pants and in my butt." Later that night C. and M. were trying to sleep in the attic. M. testified that "I do not know exactly what Steve was trying to do, but I think he was trying to stick his penis in my butt." M. was wearing clothes at the time. He did not remember if Valko was wearing clothes. The prosecutor asked "can you describe what he did?" and M. replied "no."

M. also testified, once again, that Valko told him "something would happen" to him and his mother if he told anyone about the sex acts. M. stated that he was told this "a couple" of times.

M. described all acts except the last one in detail, gave detailed

descriptions of the surroundings, and maintained the same details through cross-examination. He also demonstrated the first three acts using anatomically correct dolls.

M.'s grandmother testified for the State and during her testimony was declared a hostile witness. She is the mother of both C. and M.'s mother. Her husband, C.W., is the father of C. and the uncle of Steve Valko. According to her testimony, she received a phone call from her daughter in July 1985, reporting that M. had been molested by Valko. Then M.'s grandmother and her husband spoke to Valko on the phone. M.'s grandmother reported that she accused Valko of having sex with M. She testified that Valko said "Let me talk. I'm sorry." Then, "I'm sorry. Let me talk. Let me explain. Can I explain?" M.'s grandmother stated that she did not let Valko talk because she saw no reason to let Valko explain anything.

M's grandmother testified further that the defendant never admitted his guilt to her, although he did ask for M.'s mother's phone number so he could call and talk to her. M.'s grandmother also stated, however, that she told her daughter and police detective Raymond Krull that Valko had admitted guilt. Furthermore, she told Assistant State's Attorney Kathy Quattrocchi that M. and C. were "telling the truth about what happened."

M.'s mother was recalled as an impeachment witness. She testified that her mother had told her that Valko admitted the assaults and promised to make it up to her and her son.

C.W. (who is the husband of M.'s grandmother, the father of C., and uncle of Valko) testified as a hostile witness for the State. He described a brief conversation with Valko after M.'s mother called to tell about the alleged child molesting. C.W. testified that he called Valko and asked, "Steve, what's this bull I hear with you, [C.], and [M.]?" According to C.W., Valko said, "Well, I'm sorry for anything I have done." Then C.W. handed the phone to his wife.

Later, he started to testify that he had let his son decide whether to come to court or not. The judge sustained objections to a line of questions about why C. did not appear in court.

Police detective Raymond Krull testified that he talked to C.W. about the conversation between C.W. and Valko. Krull stated that C.W. told him he had asked Valko directly about having sex with M. and C., and Valko had admitted this.

Valko's wife and others corroborated some of the details of M.'s testimony, including the physical descriptions of places where the acts allegedly occurred and the fact that the various children involved had stayed with Valko during the times in question. The boy D. testified

that he slept with Valko and M. after Thanksgiving, but he was not aware of any sex acts performed during the night.

Defendant Valko testified on his own behalf. He denied performing any sexual acts with C. or M. He claimed that he had caught M. performing fellatio upon C., but he did not report this to either boy's parents.

In closing, the State reviewed testimony of witnesses, including C.'s parents. The prosecutor stated that M.'s grandmother and C.W. seemed more concerned about protecting Valko than protecting M. or C. He suggested why C. had not testified:

> "Maybe [C.] doesn't want to come to Court ladies and gentlemen. Because maybe he feels sorry for this guy. Maybe he liked what this guy was doing to him and these parents don't care as much about their grandson. I don't know. I don't know. I've never talked to [C.] ladies and gentlemen. I've never even seen [C.] because, you know, his parents wouldn't let him come down here."

At the end of this statement, the defense objected. The objection was overruled.

## I

Valko argues that reversible error occurred when M.'s mother testified in excessive detail about the complaint which M. made to her six months after the alleged offenses occurred. Valko argues that the statute which permits this hearsay evidence to corroborate a child's testimony also strictly limits the detail allowed in the hearsay.

■ In order to preserve an issue for appeal, a defendant must both make a contemporaneous objection and include it in his post-trial motions. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124.) Since the defense did not make a timely objection to the detail in M.'s mother's testimony at trial, the State argues that the issue is waived for appeal.

■ ■ Under Supreme Court Rule 615(a) (107 Ill. 2d R. 615(a)), however, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." Courts may consider plain error "where the record clearly shows *** an alleged error affecting substantial rights." (*People v. Young* (1989), 128 Ill. 2d 1, 46, 538 N.E.2d 461.) This rule serves the dual purposes of "correcting serious injustices" and preserving "the integrity and reputation of the judicial process." (*Young*, 128 Ill. 2d at 46.) Therefore, the rule applies only "when the question of guilt is close and the evidence in question might have significantly affected

the outcome of the case [citations], or where the error alleged is so substantial as to reflect on the fairness or impartiality of the trial regardless of how closely balanced the evidence is [citations]." *People v. Sanders* (1983), 99 Ill. 2d 262, 273, 457 N.E.2d 1241.

■ To apply the plain-error exception to the waiver rule, courts should first determine if the record plainly shows that an error affecting substantial rights was committed. (*People v. Precup* (1978), 73 Ill. 2d 7, 17, 382 N.E.2d 227.) This criterion is met in criminal cases when "the evidence is closely balanced or the error is of such magnitude that the commission thereof denies the accused a fair and impartial trial or sentencing hearing. [Citations]." *Young*, 128 Ill. 2d at 47.

■ Thus, a reviewing court must first examine the record to find the strengths and weaknesses of evidence against the defendant, because "if the evidence is close, there is a possibility that an innocent person may have been convicted due to some error which is obvious from the record, but not properly preserved." *People v. Carlson* (1980), 79 Ill. 2d 564, 576, 402 N.E.2d 233.

■ Second, the court must look for "those errors of such magnitude that the commission thereof" precludes a fair trial. (*Carlson*, 79 Ill. 2d at 577.) Such errors occur, for example, when the jury instructions fail to distinguish between intent to kill and other intents which a defendant might have had (*People v. Roberts* (1979), 75 Ill. 2d 1, 14-15, 387 N.E.2d 331), when instructions fail to distinguish between elements for an insanity acquittal and a mental-illness conviction (*People v. Fields* (1988), 170 Ill. App. 3d 1, 9-10, 523 N.E.2d 1196), or when credibility is an issue and the defendant's credibility is contrasted with the credibility and reputation of the State's Attorney's office (*People v. Sexton* (1987), 162 Ill. App. 3d 607, 615, 515 N.E.2d 1359).

■ We will consider the error here because, for one of the charges, the evidence is close and, therefore, Valko's substantial rights may be involved.

■ The statute governing the admissibility of the testimony at issue in section 115—10(2) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 115—10(2)), which provides:

> "In a prosecution for a sexual act perpetrated upon a child under the age of 13, *** the following evidence shall be admitted as an exception to the hearsay rule:
> ***
>
> (2) testimony by the person to whom the child complained that such complaint was made in order to corroborate the child's testimony."

This statute allows prosecutors to introduce hearsay testimony

about the fact that the victim complained, but does not allow details of the victim's complaint. (*People v. Jackson* (1987), 165 Ill. App. 3d 665, 682, 520 N.E.2d 640; *People v. Salas* (1985), 138 Ill. App. 3d 48, 54, 485 N.E.2d 596.) The testimony can only include enough detail "to effectively corroborate the fact that a complaint was made and identify the incident as the one before the court." (*People v. Branch* (1987), 158 Ill. App. 3d 338, 341, 511 N.E.2d 872.) The testimony should not, however, include details about how the defendant seduced or coerced the victim or performed the sexual acts (see, *e.g., Salas*, 138 Ill. App. 3d at 51; *Jackson*, 165 Ill. App. 3d at 669-70) or the identity of the defendant (*Jackson*, 165 Ill. App. 3d at 680).

■ If a witness does testify about the victim's complaint in impermissible detail, the issue to be determined is whether the detail constituted reversible error. Generally, "[t]he admission of unnecessary or impermissible detail, such as the identification of the defendant, will be deemed to be harmless when substantially corroborated by the testimony of the child victim or any other pertinent evidence and the child victim is present in court and available for cross-examination." *People v. Server* (1986), 148 Ill. App. 3d 888, 900, 499 N.E.2d 1019; see, *e.g., Branch*, 158 Ill. App. 3d at 341 (the impermissible details were substantially corroborated by the testimony of the victim or by medical evidence); *People v. Lindsey* (1986), 148 Ill. App. 3d 751, 761, 499 N.E.2d 715 (facts were "strongly established by competent testimony" of the victim); *In re A.M.C.* (1986), 148 Ill. App. 3d 775, 782, 500 N.E.2d 104 (the victim had consistent demeanor and physical symptoms at the time of the complaint, testified in court with convincing detail about the acts, and demonstrated the acts with an anatomically correct doll).

Defendant relies on *Salas*, in which the court found the error was not harmless because there was no evidence corroborating the victim's story except the improperly admitted details from the hearsay testimony. (*Salas*, 138 Ill. App. 3d at 54-55.) Valko contends that the trial court committed a *Salas* error and that the error is clearly prejudicial and, therefore, reversible. He argues that the only evidence against him was the testimony of M. The details recited by M.'s mother "improperly bolstered [M.'s] improbable claim."

■ For the two counts involving oral sex, the facts make this case distinguishable from *Salas*. M. offered detailed testimony about three oral acts, then demonstrated them with anatomically correct dolls, and maintained his story with details through cross-examination. Additionally, the testimony of other people corroborated some facts like M.'s presence in the Valko home and his description of the

basement and attic there. Finally, when C.W. phoned defendant and asked him about the "bull" between him, C. and M., defendant said he was "sorry for anything I have done." And after C.W. handed the phone to his wife, Valko kept muttering that he was "sorry" and he could "explain."

For the count of anal penetration, testimony in this case does resemble the error found in *Salas*. According to M.'s mother, M. told her that Valko "tried to put his penis in my butt hole." But when M. testified, he stated that he did "not know exactly what Steve was trying to do, but I think he was trying to stick his penis in my butt." When asked if Valko was wearing clothes, M. could not remember. When M. was asked if he could "describe what [Valko] did," M. replied "no."

For these reasons, we hold that the admission of details about M.'s complaint in his mother's testimony was error. The admission of details about oral sex acts was harmless error, but the admission of testimony about anal sex was not harmless.

## II

Valko claims next that reversible error occurred when M.'s mother testified that she believed her son M. when he told her about the alleged offenses.

■■ The credibility of witnesses is a matter for the trier of fact to decide and, therefore, the prosecutor may not tell the jury his or her opinion of the veracity of witnesses. (*People v. Townsend* (1985), 136 Ill. App. 3d 385, 395, 483 N.E.2d 340.) If prosecutors do state an opinion about a witness' credibility, however, any resulting prejudice can be offset by instructions telling the jury that they alone must judge the credibility of witnesses. *Townsend*, 136 Ill. App. 3d at 394-95.

Valko cites *Townsend* and argues, *a fortiori*, that it was improper for the State to ask M.'s mother whether she believed M. when he told her about being molested.

In this case, the defense cross-examined M.'s mother and asked her if M. ever lied. Thus, the State argues, the defense invited State questions on redirect about M.'s tendency to lie or tell the truth (relying on *Alton v. Kitt* (1982), 103 Ill. App. 3d 387, 399, 431 N.E.2d 417). The State then asked if M. had ever lied about anything as important as the child molesting charges and whether she believed him. His mother told the court that she believed that M. told the truth about important matters and had told the truth in this instance as well.

■■ It appears here that defendant did open the door to questions about whether or not M. had a tendency to lie. The defense did not, however, invite specific questions about whether M.'s mother believed her son on the particular occasion when he told her Valko had molested him. Nonetheless, the trial court offset any prejudice resulting from this error by issuing instructions informing the jurors that they were the sole judges of the believability of the witnesses.

Therefore, the error was harmless.

### III

Valko also contends that reversible error occurred because in closing the State made suggestions about why C. had not testified even though the prosecution never presented evidence on that point. On appeal, Valko contends that the State in effect argued nonfacts to the jury. Furthermore, these nonfacts would tend to support conviction.

■■ Defendant waived the issue of the prosecutor's comments because he failed to include the issue in his motion for a new trial. *Enoch*, 122 Ill. 2d at 186.

However, of the three sexual acts for which Valko was convicted, C. could have testified on only one. On that one charge, M. offered clear and convincing testimony during both direct and cross-examination. Furthermore, he demonstrated the act with anatomically correct dolls. Finally, the testimony of other people established the fact that M. and C. were with Valko at the time the alleged act occurred.

Since the evidence for this act is not close, we find no reason to examine the issue waived by defendant.

### IV

Finally, Valko claims that the State failed to prove him guilty of criminal sexual assault beyond a reasonable doubt.

■■ When an appeals court reviews the sufficiency of evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (*Young*, 128 Ill. 2d at 49, quoting *Jackson v. Virginia* (1979), 443 U.S. 307, 318-19, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.) Then, " '[o]nce a defendant has been found guilty of the crime charged, the fact finder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.' " (Emphasis in original.) (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, quoting *Jackson*, 443 U.S. at 319, 61 L. Ed. 2d at

573, 99 S. Ct. at 2789.) Further, discrepancies in the testimony of witnesses go to the issue of credibility, which must be judged by the trier of fact. *People v. Thomas* (1981), 96 Ill. App. 3d 443, 450, 421 N.E.2d 357.

■■ Concerning the two counts of aggravated criminal sexual assault based on acts of oral sex, the record here shows clear, detailed, and consistent testimony by the victim both on direct and cross-examination. M. described how he spit out Valko's semen after the Thanksgiving incident, how Valko got angry when he failed to ejaculate on New Year's Eve, and how M. and C. and Valko formed a triangle for oral sex sometime in January. The victim supported his testimony by demonstrations with anatomically correct dolls. Other witnesses, including defendant's wife and relatives of both victim and defendant, corroborated M.'s descriptions of the rooms where the acts of abuse occurred and the fact that M. was staying in Valko's home at those times.

Concerning the single count of aggravated criminal sexual assault based on an act of penal penetration, M. testified that he did "not know exactly" what Valko was trying to do, but he thought Valko "was trying to stick his penis in my butt." M. could not remember if Valko was wearing clothes at the time. M. himself was clothed at the time. When M. was asked if he could "describe what [Valko] did," he said "no."

Concerning the three counts of intimidation, M. testified that Valko threatened him, saying that "something would happen" to M. and his mother if M. told anyone about the sex acts. M. testified that this threat occurred "a couple" of times.

These facts allow a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find Valko guilty of the two counts of aggravated criminal sexual assault based on acts of oral sex. The facts do not, however, support a guilty finding for the act of penal-anal penetration.

For these reasons, we affirm the judgment of the circuit court of Cook County regarding defendant's convictions for three counts of intimidation and two counts of aggravated criminal sexual assault and reverse regarding the conviction for one count of aggravated criminal sexual assault.

Judgment affirmed in part and reversed in part.

McNAMARA and EGAN, JJ., concur.