(No. 84452.—)

THE PEOPLE OF THE STATE OF ILLINOIS *ex rel.*
JOSEPH E. BIRKETT, State's Attorney of Du Page
County, *et al.*, Appellees, v. THE CITY OF CHI-
CAGO, Appellant.

*Opinion filed December 17, 1998.*

BILANDIC, J., dissenting.

Brian L. Crowe, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon and Timothy W. Joranko, of counsel), Joseph M. Laraia, of Laraia & Hubbard, of Wheaton, and Anton R. Valukas and William D. Heinz, of Jenner & Block, of Chicago, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Nancy J. Wolfe, Assistant State's Attorney, and Joseph V. Karaganis, A. Bruce White and John W. Kalich, of Karaganis & White, Ltd., Special Assistant State's Attorneys, of Chicago, of counsel), for appellees.

Benjamin Wolf and Adam Schwartz, of Chicago, for *amicus curiae* American Civil Liberties Union of Illinois.

Bruce R. Pfaff, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

CHIEF JUSTICE FREEMAN delivered the opinion of the court:

In this appeal, we are asked to recognize a "deliberative process privilege" to protect certain advice and discussions between government officials concerning formulation of governmental decisions and policy. For the reasons that follow, we hold that the adoption of a

privilege as broad-based as that sought in this case is best left to the legislature.

## BACKGROUND

Defendant, the City of Chicago (City), brought this appeal from a trial court order holding it in contempt for refusing to produce certain documents sought by plaintiffs, Du Page County, the Du Page County State's Attorney, and the municipalities of Bensenville, Elmhurst and Wood Dale, during the course of underlying litigation. In the underlying suit, plaintiffs requested declaratory and injunctive relief, alleging as follows. Plaintiffs are located in close proximity to O'Hare International Airport, which is owned and operated by the City, and have suffered ongoing severe noise, air pollution and safety concerns resulting from incoming and outgoing flights. Plaintiffs charged that the City had completed extensive construction to O'Hare, without obtaining a certificate of approval from the Illinois Department of Transportation (IDOT) as required under the Illinois Aeronautics Act (Act) (620 ILCS 5/47 (West 1994)). In addition, the City had plans to proceed with even larger new expansion and alteration projects, all without procuring the required certificate from IDOT. According to plaintiffs, the City was deliberately embarking on a scheme of incremental construction ventures, with the purpose of greatly expanding airport capacity while circumventing IDOT approval as required under the Act. Thus, the complaint requested that the City's prior construction be declared in violation of the Act and that its current expansion be halted unless it procured the required certificate of approval.

On February 2, 1996, plaintiffs served the City with a request to produce, in relevant part, all documents concerning applications for certificates of approval under the Act; documents relating to construction projects for O'Hare since 1970; all documents concerning plans or

discussions regarding alterations to increase O'Hare's capacity, or concerning past, present, or proposed "airport layout plans" for the airport. The City objected to the request asserting, *inter alia*, that the documents were irrelevant to the present litigation and were immune from discovery under the "deliberative process privilege." Plaintiffs moved to compel production of the documents, arguing that the City had failed to properly assert the privilege by submitting a privilege log or by identifying the documents supposedly covered by the privilege.

In its response to plaintiffs' motion to compel, the City agreed to produce "all requested documents relating to past and current construction projects at O'Hare," including documents relating to projects approved for the future. However, the City declined to produce documents relating to "discussions," "plans" or "forecasts" concerning future projects as yet unapproved, claiming that such documents were covered under the deliberative process privilege. The City also refused to release the privileged documents under a protective order, arguing that such an order would hinder the ability of City officials to engage in deliberations free of outside intrusions. The City's response to the motion to compel was supported by several exhibits, including the affidavit of Renee C. Benjamin, deputy commissioner for policy and procedure for Chicago's department of aviation (hereinafter department). In the affidavit, Benjamin attested to the confidentiality of the documents alleged to be privileged. The City subsequently filed a supplemental affidavit of Kitty Freidheim, deputy commissioner for planning for the department.

After a hearing on May 20, 1996, the trial court granted plaintiffs' motion and compelled the immediate production of the requested documents. The court rejected a subsequent motion by the City for clarification

and reconsideration of this ruling, and entered an order stating that the privilege was not valid in Illinois and that the City must produce all documents withheld under the claim of privilege. The court also gave the City leave to submit logs accompanying the allegedly privileged documents, and stated that the court would keep these documents under seal.

Shortly thereafter, the court entered a protective order encompassing all of the allegedly confidential documents and restricting plaintiffs' use and disclosure of these documents. Nonetheless, the City informed the court that it intended to withhold the documents from plaintiffs until the appellate court could rule on its privilege claim.

On November 4, 1996, after again having ordered that the documents be released to plaintiffs subject to the protective order, the court granted a motion by the City to be held in contempt in order to properly appeal the rejection of its claim of deliberative process privilege. The court also entered an "access order" granting plaintiffs' counsel *in camera* access to the documents filed under seal. The access order provided that enforcement would be stayed to allow the City time to appeal.

On appeal, the appellate court initially stayed the access order. It then, *inter alia*, affirmed the court's refusal to recognize the deliberative process privilege, finding that creation of the privilege was best left to the legislature. The court further rejected the argument that protection of deliberative documents was in the public interest. 292 Ill. App. 3d 745. We granted leave to appeal (134 Ill. 2d R. 315(b)), and now affirm the decision of the appellate court rejecting the deliberative process privilege.[1]

---

[1]The Illinois Trial Lawyers Association and the Illinois chapter of the American Civil Liberties Union have filed briefs as *amici cu-*

## ANALYSIS

Defendant urges that we adopt a common law deliberative process privilege to exempt from discovery "confidential advice given to those involved in making [decisions and] policy for state and local government." Within this realm, defendant seeks protection of all confidential documents prepared in connection with yet unapproved plans to alter or expand the airport.

Widely recognized in the federal courts, the deliberative process privilege protects certain classes of intra-agency communications offered in the course of governmental decisionmaking. See *Kaiser Aluminum & Chemical Corp. v. United States*, 157 F. Supp. 939 (Ct. Cl. 1958); see also *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993). Some courts have defined the privilege to encompass:

> "intra-governmental documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 324 (D.D.C. 1966), *aff'd*, 384 F.2d 979 (D.C. Cir. 1967).[2]

Excluded from the privilege are any factual aspects of predecisional communications, and communications made subsequent to the agency's final decision. *Farley,*

---

*riae* in opposition to the privilege.

[2]It appears that the term "deliberative process privilege" has come to be recognized by some courts as interchangeable with the terms "executive privilege," or "governmental," "official information" or "intragovernmental opinion" privilege. See, *e.g.*, *Bobkoski v. Board of Education of Cary Consolidated School District 26*, 141 F.R.D. 88, 91 (N.D. Ill. 1992); see also *Hamilton v. Verdow*, 287 Md. 544, 553 n.3, 414 A.2d 914, 920 n.3, citing E. Cleary, McCormick on Evidence §§ 106, 107, at 229-31 (2d ed. 1972). The accuracy of such fluid classification is questionable. For purposes of this opinion, we refer to the asserted privilege as the deliberative process privilege, and pass solely upon that privilege as defined in this case.

11 F.3d at 1389, citing *National Labor Relations Board v. Sears, Roebuck & Co.*, 421 U.S. 132, 152, 44 L. Ed. 2d 29, 48, 95 S. Ct. 1504, 1517 (1975). In addition, the privilege is qualified in that a litigant may obtain access to privileged communications upon a showing of particularized need. See *Sears*, 421 U.S. at 149 n.16, 44 L. Ed. 2d at 46 n.16, 95 S. Ct. at 1516 n.16. The City urges that we create a privilege based upon this definition.

The primary rationale for the privilege is to ensure the frank exchange of advice and opinions in the course of governmental decisionmaking and policymaking. *Zeiss*, 40 F.R.D. at 324; see also *Kaiser*, 157 F. Supp. at 946. Courts adhering to the privilege believe that exposing certain types of predecisional communications to public scrutiny and possible reprisals would produce a "chilling effect" on the candor of government staff, jeopardizing the decisionmaking process. See *Farley*, 11 F.3d at 1389, quoting *United States v. Nixon*, 418 U.S. 683, 705, 41 L. Ed. 2d 1039, 1062, 94 S. Ct. 3090, 3106 (1974). Thus, the privilege serves the dual aim of fostering effective and efficient government decisionmaking, and in the process, advancing the public interest.

Nonetheless, privileges are strongly disfavored because they operate to "exclude relevant evidence and thus work against the truthseeking function of legal proceedings." *People v. Sanders*, 99 Ill. 2d 262, 270 (1983); see also *Illinois Educational Labor Relations Board v. Homer Community Consolidated School District No. 208*, 132 Ill. 2d 29, 34 (1989), citing *Nixon*, 418 U.S. at 709-10, 41 L. Ed. 2d at 1065, 94 S. Ct. at 3108. Further, it is believed that governmental privileges, if created and applied indiscriminately, will undermine public trust "in the integrity of the government and its commitment to serving the public interest." G. Wetlaufer, *Justifying Secrecy: An Objection to the General Deliberative Privilege*, 65 Ind. L.J. 845, 890 (1990); see also *Nixon*,

418 U.S. at 709, 41 L. Ed. 2d at 1064, 94 S. Ct. at 3108. As such, courts will not create or apply any evidentiary privilege unless it " 'promotes sufficiently important interests to outweigh the need for probative evidence.' " *University of Pennsylvania v. Equal Employment Opportunity Comm'n*, 493 U.S. 182, 189, 107 L. Ed. 2d 571, 582, 110 S. Ct. 577, 582 (1990), quoting *Trammel v. United States*, 445 U.S. 40, 51, 63 L. Ed. 2d 186, 195, 100 S. Ct. 906, 912 (1980); see also *Homer*, 132 Ill. 2d at 34; *People ex rel. Noren v. Dempsey*, 10 Ill. 2d 288 (1957). For these reasons, this court has repeatedly concluded that the extension of an existing privilege or establishment of a new one is a matter best deferred to the legislature. *Homer*, 132 Ill. 2d at 34; *Sanders*, 99 Ill. 2d at 269 (recognizing that great majority of privileges recognized in Illinois are statutory creations).

The City advances two bases of support for our adoption of the deliberative process privilege: namely (1) the recognition of the privilege in the federal courts; and more importantly (2) the existence of an exemption under Illinois' Freedom of Information Act (FOIA) (5 ILCS 140/1 *et seq.* (West 1994)) covering "predecisional" governmental communications. We address the contention regarding the FOIA first.

The purpose of the FOIA is to ensure the access of the general public to the records of public bodies, subject only to certain explicit exemptions. 5 ILCS 140/3(a) (West 1994); *Homer*, 132 Ill. 2d at 36-37. In particular, section 7(1)(f) provides an exemption for "[p]reliminary drafts, notes, recommendations, memoranda and other records in which opinions are expressed, or policies or actions are formulated." 5 ILCS 140/7(1)(f) (West 1994). The City asserts that this exemption manifests the legislature's intent to create a deliberative process privilege applicable to parties in litigation. We disagree.

The existence of an FOIA exemption for predecisional

materials is evidence of a public policy favoring the confidentiality of such communications. However, it is not dispositive of whether the legislature sought to create an analogous evidentiary privilege. *Homer*, 132 Ill. 2d at 37; *In re Marriage of Daniels*, 240 Ill. App. 3d 314, 326-37 (1992). The FOIA was intended to further the citizens' general desire or need to know about the affairs of government, thus enhancing public discourse and governmental accountability. 5 ILCS 140/1 (West 1994); *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1344 (D.C. Cir. 1984) (discussing the federal FOIA). However, the concerns underlying this purpose often differ greatly from those of a party in litigation who needs governmental information in order to establish his case. See *Pierson v. United States*, 428 F. Supp. 384, 394 n.24 (D. Del. 1977). For example, while a citizen may procure nonexempt information out of little more than personal curiosity, a litigant must make a threshold showing of the relevancy of such information before obtaining it in discovery. Further, there are safeguards inherent in the discovery process, such as the use of protective orders, which serve to shield the government's interest in maintaining confidentiality. See *Friedman*, 738 F.2d at 1344. Recognizing these principles, courts considering this question under the federal FOIA have held it unsound to equate FOIA exemptions to similar discovery privileges. *Friedman*, 738 F.2d at 1344; *Association for Women in Science v. Califano*, 566 F.2d 339, 342 (D.C. Cir. 1977) (existence of FOIA exemption neither creates new privileges nor affects existing ones). The drafters of the Illinois FOIA also acknowledged a distinction, observing that the FOIA was "more in the *** interest of citizen involvement in public records" and that "litigation, depositions, request for documentation" were all "far beyond the range" of the bill. 83d Ill. Gen. Assem., Senate Proceedings, May 27, 1983, at 130-31 (statements of

Senator Bruce); *Illinois Educational Labor Relations Board v. Homer Community Consolidated School District No. 208*, 160 Ill. App. 3d 730, 736 (1987), *aff'd*, 132 Ill. 2d 29 (1989) (in enacting the FOIA, legislature was balancing need of public to be informed against need for confidentiality, but was not balancing needs of litigants against such need).

We find these principles especially applicable under the circumstances at bar, where the government is a party to the litigation and, more importantly, has been charged with malfeasance. In such circumstances, it is unjust to afford the government the benefit of withholding relevant evidence while requiring its opponent to adhere to the established rules of open discovery. In this case, plaintiffs have raised a colorable claim that the City engaged in a purposeful and covert scheme to circumvent the requirements of a statute. As observed by *amici*, this case, like other state actions, such as an alleged breach of contract or certain tort claims, could well turn more upon a showing of the government's *intent* or *motives* in taking a particular action, rather than upon the fact of the final action itself. See, *e.g.*, *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 179 (1989) (ultimate inquiry is whether employer intentionally discriminated against plaintiff). The adoption of a privilege shielding predecisional opinions and recommendations, cast in such broad terms as that espoused by the City here, would undoubtedly operate to hinder the fact-finding process in many of these cases. We do not believe that our General Assembly intended such a result in the creation of FOIA exemption 7(1)(f).

The City also argues that the policies underlying the federal courts' recognition of the privilege militate in favor of its adoption in this court. As with many federal courts adhering to the deliberative process privilege, the City's affidavits and brief repeatedly parrot the rationale for the executive privilege as initially stated in *Nixon*:

"Human experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances and for their own interests to the detriment of the decisionmaking process." *Nixon*, 418 U.S. at 705, 41 L. Ed. 2d at 1062, 94 S. Ct. at 3106.

See also *Sears*, 421 U.S. at 150-51, 44 L. Ed. 2d at 47, 95 S. Ct. at 1516; *Environmental Protection Agency v. Mink*, 410 U.S. 73, 87, 35 L. Ed. 2d 119, 132, 93 S. Ct. 827, 836 (1973). Freidheim's affidavit states that:

"[t]he safety of hundreds of thousands of air travelers at O'Hare each year depends upon the integrity of the Department's planning process, and the ability of its participants to raise questions and concerns about planning alternatives, simulations, or models without fear that the opinions they express during pre-decisional deliberations will later be disclosed and subject to public scrutiny."

One need only review the cases upon which the City repeatedly relies, however, to see stark distinctions from the case at bar. For example, to the extent *Sears* and *Mink* provide persuasive authority for the need for a governmental privilege, it is for a narrowly tailored one, protecting communications given directly to high-level government officials, containing advice bearing heavily on the final decision or policy. See *Sears*, 421 U.S. 132, 44 L. Ed. 2d 29, 95 S. Ct. 1504 ("advice and appeals memoranda" prepared for National Labor Relations Board by its general counsel advising whether or not to file unfair labor practice complaints); *Mink*, 410 U.S. 73, 35 L. Ed. 2d 119, 93 S. Ct. 827 (documents by advisors to President containing recommendations over upcoming underground nuclear test). See also *Kaiser*, 157 F. Supp. at 942 (executive privilege asserted, on grounds of "national interest," over document containing advice to the General Services Administrator concerning the sale of war asset). The *Nixon* case involved the President's claim of privilege over his confidential conversations with "close advisors." The Court recognized the "plain" and "valid need for protection of communications between

high Government officials and those who advise and assist them in *** their manifold duties." *Nixon*, 418 U.S. at 705, 41 L. Ed. 2d at 1062, 94 S. Ct. at 3106. In addition, it is significant that the executive privilege applied in *Nixon* was rooted not only in national interests, but also in the separation of powers doctrine. See also *Hamilton*, 287 Md. 544, 414 A.2d 914 (analogous privilege found for governor); *University of Pennsylvania*, 493 U.S. at 195, 107 L. Ed. 2d at 585, 110 S. Ct. at 585. The City does not claim any such basis for the privilege asserted in this case.

These cases provide no real support for the adoption of the deliberative process privilege proposed here. Although the privilege may be applied on a qualified basis, its scope is unreasonably broad. The City appears to claim a privilege over all "deliberative" communications regarding any proposed expansion or alteration to the airport or airport layout plan, no matter how trivial or routine. Further, the City does not restrict the privilege based upon the importance or relevance of the particular communication to the decision or decisions, or to the level of the official either compiling or relying upon the communication.

As such, although the City professes to a need to ensure the safety of O'Hare passengers and the integrity of the decisionmaking process, its claim of the future "chilling" of these communications amounts to nothing more than speculation. *Cf. Farley*, 11 F.3d at 1389, citing *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980). Assuming, *arguendo*, that certain types of state governmental decisions call for advice or opinions that would be controversial or unpopular, the City provides no real evidence that governmental officials would withhold giving advice they believe is necessary and correct, based merely upon the remote possibility that it could some day be produced in

litigation. Indeed, the City does not claim that the decisionmaking process has been harmed thus far despite the absence of such a privilege in this state. *Babets v. Secretary of the Executive Office of Human Services*, 403 Mass. 230, 238, 526 N.E.2d 1261, 1266 (1988). We conclude that in light of the range of competing policies underlying the deliberative process privilege, its adoption should be left to the General Assembly.

The City also contends that the confidentiality test established by Dean Wigmore (see 8 J. Wigmore, Evidence § 2285, at 527 (McNaughton rev. ed. 1961)) and most recently applied by this court in *Homer*, 132 Ill. 2d at 35, supports the recognition of a privilege protecting the communications in this case. We disagree. Recognizing that the creation of a new privilege is presumptively a legislative task, *Homer* allows for a court's recognition of an evidentiary privilege, in "rare instances," where each of the following conditions are met: (1) the communications originated in a *confidence* that they will not be disclosed; (2) this element of *confidentiality is essential* to the full and satisfactory maintenance of the relation between the parties; (3) the *relation* must be one which in the opinion of the community ought to be sedulously *fostered*; and (4) the *injury* that would inure to the relation by disclosure would be *greater than the benefit* thereby gained for the correct disposal of litigation. *Homer*, 132 Ill. 2d at 35; *In re October 1985 Grand Jury No. 746*, 124 Ill. 2d 466, 475 (1988). The burden of establishing the privilege rests with the party claiming exemption under it. *Homer*, 132 Ill. 2d at 35. Furthermore, the mere assertion that the matter at issue is "confidential" and "privileged" will not suffice. Rather, the proponent of the privilege must set forth with particularity circumstances giving rise to the privilege in each particular case. *Cox v. Yellow Cab Co.*, 61 Ill. 2d 416, 419-20 (1975); *Krupp v. Chicago Transit Authority*, 8 Ill.

2d 37, 42 (1956); *cf. Douglas v. Windham Superior Court,* 157 Vt. 34, 43-45, 597 A.2d 774, 780 (1991), citing *King v. Conde,* 121 F.R.D. 180 (E.D.N.Y. 1988).

We dispose of this issue based upon the City's failure to establish the first element of the test. Under this prong, the City contends it had a "general expectation of confidentiality" derived once again from two sources: the long-standing recognition of a deliberative process privilege under federal law, and the existence of FOIA exemption 7(1)(f). The City's argument is misplaced, however, because neither of these sources conclusively establishes the existence of a deliberative process litigation privilege in this state. Of course, it is beyond question that the federal courts' recognition of a privilege does not justify the City's assumption of that same privilege in this court. Further, as stated above, FOIA exemption 7(1)(f) does not demonstrate a legislative intent to adopt the privilege, as there are great differences between the concerns of the FOIA and those underlying this privilege. Accordingly, the City has failed to demonstrate that the communications at issue originated in confidentiality under *Homer.* Thus, this argument fails.

In light of our decision on this issue, we do not reach the City's argument concerning the alleged error in the trial court's access order.

## CONCLUSION

For the foregoing reasons, the judgment of the appellate court rejecting the deliberative process privilege in this case is affirmed.

*Affirmed.*

JUSTICE BILANDIC, dissenting:

I hasten to add my vigorous dissent to the majority opinion which refuses to recognize a deliberative process privilege.

The *Burnham Plan of 1909,* sponsored by The Com-

mercial Club of Chicago, is regarded as the model for regional planning which turns visions into reality. "Make no little plans; they have no magic to stir men's blood and probably themselves will not be realized. Make big plans; aim high in hope and work, remembering that a noble, logical diagram once recorded will never die, but long after we are gone will be a living thing, asserting itself with ever-growing insistency. Remember that our sons and grandsons are going to do things that would stagger us. Let your watchword be order and your beacon beauty[,]" proclaimed Daniel H. Burnham about this historic event. *Respectfully Quoted,* A Dictionary of Quotations Requested from the Congressional Research Service 256 (S. Platt ed. 1989).

As we embark into the new millennium, The Commercial Club of Chicago released a sequel to the 1909 Burnham Plan for the Metropolitan Chicago area. "The Plan of 1999 focuses principally on an area of 3,749 square miles of real estate covering six counties and supporting about 7.7 million people and 4.1 million jobs. The six counties are Cook, Du Page, Kane, Lake, McHenry, and Will." *Chicago Metropolis 2020,* The Commercial Club of Chicago, at 1 n.1 (October 30, 1998).

By refusing to recognize a deliberative process privilege, the majority has unwittingly driven a stake through the heart of executive creativity which emerges from the deliberative process. "And today, as in the past, we must ask ourselves what are the strengths on which we must build, what are the new opportunities that we must exploit, and what are the serious obstacles that we must overcome. Only as we answer these questions and turn those answers into actionable programs will we prove worthy of our heritage and approximate the economic and social goals to which we aspire." *Chicago Metropolis 2020,* The Commercial Club of Chicago, at 5 (October 30, 1998).

The executive branch, from the Governor of our state to the lowest rank of executive in government, should not be inhibited by the shackles with which the majority seeks to bind them.

The deliberative process privilege protects from discovery predecisional documents that reflect opinions, recommendations and deliberations generated in the course of the decisionmaking process of a governmental agency. See *National Labor Relations Board v. Sears, Roebuck & Co.*, 421 U.S. 132, 150, 44 L. Ed. 2d 29, 47, 95 S. Ct. 1504, 1516 (1975); *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993). The privilege has been recognized by the United States Supreme Court, the Seventh Circuit Court of Appeals and other federal and state courts. See *Sears*, 421 U.S. 132, 44 L. Ed. 2d 29, 95 S. Ct. 1504; *Farley*, 11 F.3d 1385 (7th Cir. 1993); *First Eastern Corp. v. Mainwaring*, 21 F.3d 465 (D.C. Cir. 1994); *Ostoin v. Waterford Township Police Department*, 189 Mich. App. 334, 471 N.W.2d 666 (1991); *Doe v. Alaska Superior Court, Third Judicial District*, 721 P.2d 617 (Alaska 1986); *Hamilton v. Verdow*, 287 Md. 544, 414 A.2d 914 (1980). This court should likewise recognize the deliberative process privilege.

The need to recognize a deliberative process privilege is readily apparent. The realities of governmental decisionmaking create a need for preserving the confidentiality of intragovernmental documents reflecting the mental processes of decisionmakers. Good government requires sound decisionmaking. Sound decisionmaking depends on research, planning, and the consideration of the full array of contrasting views on a particular subject. Those responsible for providing assessments or detailing the potential pitfalls of policy options necessarily depend on an expectation of confidentiality, if their advice is to be candid and uninhibited. In my view, it is of paramount importance that government officials be able to engage

in open and candid discussions without a concern for appearances. Such an atmosphere is conducive to good quality governmental decisions and policies, which result from unvarnished advice. Policymakers should not have to fear that every warning or dissent received from staff members could one day become public, and staff members should be free to dissent from recommendations without fear that their dissent will become public. The consequence of not recognizing the deliberative process privilege could be severe. The ability to obtain routine disclosure of predecisional deliberative documents would enable opponents of government action to embarrass government decisionmakers with their own unpolished thoughts.

It is important to emphasize that the privilege is not absolute. Rather, it is a qualified privilege because it can be overcome if the party seeking discovery shows a sufficient need for the privileged documents. In showing a sufficient need, the party must establish that the documents are relevant, and that the party has a particularized need for the documents which outweighs the government's interest in maintaining confidentiality. See *Farley*, 11 F.3d at 1389-90. The privilege attempts to accommodate the competing interests of a just resolution in legal disputes with the need to protect certain confidential government documents. In light of its qualified nature, the privilege will not interfere with the truth-seeking function of legal proceedings since a government entity will not be able to hide relevant and necessary documents.

In addition to the realities of government decisionmaking, section 7(1)(f) of the Illinois Freedom of Information Act (5 ILCS 140/7(1)(f) (West 1994)), which exempts predecisional governmental materials from disclosure to the public, supports recognition of the deliberative process privilege in the context of litigation.

Although the exemption in section 7(1)(f) involves disclosure to the public in general and not in response to discovery in litigation, it nevertheless evinces a general public policy of protecting predecisional governmental deliberative materials from disclosure.

The context of this case further underscores the need for recognition of the deliberative process privilege. This case centers around a political fight between the plaintiffs, which are municipalities located in close proximity to O'Hare International Airport, and the City of Chicago, which owns and operates O'Hare, concerning the possible expansion of O'Hare. According to the Chicago Metropolis 2020 report, O'Hare is presently unable to accommodate the ever-growing demand on its facilities, and the loss of operations will have significant adverse economic repercussions for the region. *Chicago Metropolis 2020*, The Commercial Club of Chicago, at 40 (October 30, 1998). The report recommends expanding capacity at O'Hare to maintain the region's preeminence as a domestic air transportation hub and to build on its potential as an international gateway. *Chicago Metropolis 2020*, The Commercial Club of Chicago, at 89 (October 30, 1998). Likewise, a study commissioned by the Chicagoland Chamber of Commerce warns of a $10 billion annual loss to the region's economy, with $7 to $8 billion being borne by the O'Hare vicinity suburbs, if capacity is not dramatically increased at O'Hare to meet demand. *Chicago Aviation Policy*, Chicagoland Chamber of Commerce, at 2 (November 12, 1998). The heart of the dispute in this case concerns the plaintiffs' opposition to any such expansion at O'Hare. The plaintiffs contend that the City has plans to proceed with future expansion of O'Hare without obtaining the required certificate of approval from the Illinois Department of Transportation. The plaintiffs seek to use the documents at issue in their attempt to halt any future expansion plans at O'Hare.

This strategy is evident given the nature of the documents.

The types of documents sought by the plaintiffs should be protected from disclosure. The affidavits in the record reveal the planning process from which these documents were generated. According to affidavits submitted by various deputy commissioners of the City's department of aviation, the documents requested by the plaintiffs reflect preliminary and predecisional planning deliberations concerning development options and alternatives at O'Hare. Included in these deliberations are opinions expressed during meetings and recommendations by City personnel and hired consultants. The affidavits further state that the documents contain confidential advice given to municipal policymakers evaluating policy options. Such planning documents go to the heart of the City officials' ability to engage in open and honest discussions relating to future planning. I believe that these officials should be able to discuss all pertinent policy options without fear that their candid assessments of each option's strengths and weaknesses will be disclosed to the airport's opponents. The affidavits of the deputy commissioners establish the importance of protecting these airport planning deliberations from disclosure in order to maintain the candid evaluation of proposals within that process. I would therefore hold that any documents relating to opinions, discussions, forecasts, recommendations and other predecisional matters concerning O'Hare and arising in the course of government decisionmaking are protected by the deliberative process privilege.

For the foregoing reasons, I would reverse the judgments of the appellate and circuit courts and recognize a deliberative process privilege. I would also remand to the circuit court and direct it to conduct an *in camera* review of the City's documents filed under seal to determine

which documents are covered by this privilege and to determine whether the plaintiffs have shown a particularized need for any privileged documents.